## ROBERTS ALIAS WARD vs. STATE OF MISSOURI.

The city officers of the city of St. Louis arrested the defendant as a vagrant under the city ordinances, and discharged him again upon his promise that he would leave the city within a specified time. After the time had elapsed, the deceased again, without a warrant, arrested defendant under an order from the head of the police, and was killed by defendant in resisting the arrest.

Held,

1. That if the arrest by the deceased was made solely because defendant had broken his promise to leave the city, it was illegal; but if made because defendant was at the time a vagrant within the meaning of the city ordinances, then it was legal.

2. Whether the arrest was made by deceased under circumstances which would constitute it legal or illegal, is a question of fact which should be submitted to the jury, under proper instructions from the court.

3. If the arrest was illegal, and the deceased was killed by defendant in resisting it, in the absence of proof of express malice, the killing would only amount to manslaughter.

4 The use of a deadly weapon in resisting an illegal arrest of the person is not sufficient to constitute the killing murder.

## APPEAL from the St. Louis Criminal Court.

### STATEMENT OF THE CASE.

Appellant was indicted at the ———— term of the criminal court, along with one Richard Jones, for the murder of Ephraim Hibler, a policeman of the city of St. Louis, and on the trial of said charge at the September term of said court, was found guilty of murder in the first degree.

On the trial of said cause the facts appeared as follows :—

Appellant was arrested in the city of St. Louis, sometime during the month of May last, on a charge of vagrancy, pigeon dropping, or stealing. He was confined in the calaboose some seven or eight days, when he was discharged by virtue of an agreement made between him, the city marshal, the recorder, and city attorney, whereby he promised to leave the city after the stipulated time. The marshal gave the order for the second arrest, because, as he testified on the trial, he, Roberts, was a dangerous and suspicious character, because he did not leave the city according to agreement. A few days after this, officers Ephraim Hibler and Hahn undertook to arrest Roberts at the Marengo coffee house. Roberts was in the bar-room. When the officers entered, he rushed through the inner door of the back room and endeavored to make his escape through the door out. The door was locked, and he was detained until the officers came up. They both told Roberts that they had orders to arrest him for vagrancy, and that he must go with them. Roberts resisted, and said he would not go. During this time, Jones was striving to open the door, with a bundle of keys. He succeeded, and endeavored to rescue Roberts from the officers, but did not succeed. Jones then went out, and the officers pulled Roberts out upon the middle of the floor—a scuffle ensued, during which Roberts snapped a pistol at officer Hahn, who knocked him down. Jones having returned asked Roberts where his other one

was; Roberts answered that he did not have it. Jones then went up to him and fooled with his coat—stepped back and told him to look in his pocket. Roberts was then pulled by the officers into the bar-room, when he got between the counter and the wall, and swore he would not go. Said he would rather die than be sent to the work-house. Then said, "By God, I'll shoot!" He then bent down, twisted a pistol around in his coat pocket, and discharged it. The load took effect on Ephraim Hibler, who died of the wound. At the time of the shooting, Hibler had hold of one side of Roberts' coat collar, and Hahn hold of the other, and were persuading him to go along. Roberts then broke loose and fled, but was overtaken, knocked down and carried to the calaboose. About thirty minutes elapsed from the time the officers entered the house until the time of the shooting, and the events transpired about 12 o'clock at night.

The State offered in evidence an ordinance passed by the city council of St. Louis, being Ordinance No. 2364, and entiled "An ordinance concerning vagrants." Also, Ordinance No. 2410, entitled "An ordinance establishing and regulating the police department," and read therefrom sec. 12, which is as follows: "That it shall be the duty of privates to be punctual at roll call at the second district station house; to obey punctually and to the best of their ability, the orders of the chief of the police, the captain of the city guard, and the lieutenant to whose command they may be assigned; to remain on their respective beats, and not to leave the same except in the discharge of their respective duties; they shall, to the best of their abilities preserve order, peace and quiet throughout the city; they shall arrest all persons found in the act of violating any law or ordinance, they shall arrest all persons found under suspicious circumstances, and who cannot give a good account of themselves, and convey all persons so arrested to the station house of the district in which any arrest may be made, and report to the lieutenant of such district the cause of the arrest, the names of the witnesses, and all facts connected therewith.

"The members of the guard shall have authority to enter any house, enclosure or other place where breach of the peace, or crime, or breach of ordinance has been, or is being, committed, and to arrest the offender or offenders; but shall not enter any dram-shop, bawdy house, or other place of degradation, except in discharge of their duty."

During the course of the trial the State offered the evidence to show the defendant guilty of acts constituting vagrancy, which was objected to and objection sustained; to which State excepted.

The defendant then offered the following instructions, which were refused by the court, to which refusal the defendant excepted:

"That unless the facts prove wilfulness, premeditation and deliberation, the killing cannot be murder in the first degree.

"That a police officer has no legal right to arrest a citizen without a legal warrant, unless for an offence committed in his presence; and the verbal order of the city marshal is not such a warrant, and a citizen has the right to resist the execution of an order so granted, and if by such resistance the police officer is killed, in the heat of passion without the design to effect death, by a dangerous weapon, the killing is manslaughter in the third degree.'

"That if the killing in the present case was by the accidental discharge of the pistol by the prisoner while in the heat of passion, the killing is not murder.

"That a police officer, acting beyond the scope of his authority in making an arrest, is a trespasser, and a citizen is authorised to resist an unlawful arrest, whether the attempt be made by a police officer or a private citizen.

"That a police officer making an arrest without a warrant, in a case where a warrant is necessary by law, is acting beyond the scope of his authority, and the citizen is authorized to resist such attempt to arrest.

"That a police officer is not authorized to make, or justified in an attempt to make, an unlawful arrest, by reason of the command of a superior officer.

"Any agreement made by the prisoner to leave the city within a given time, is not binding upon him, and the non-compliance therewith does not furnish a legal cause of arrest.

---

Roberts, alias Ward vs. The State.

---

"An officer is empowered to arrest— 1st. In case of violation of law committed under his personal observation. 2d. Where he has good reason to believe that a felony has been committed. And, 3d. By virtue of a warrant issued by an authorized officer, and all arrests made under other circumstances are illegal, and violence may be used if necessary to resist the enforcement of them.''

The court instructed the jury as follows :

"If the jury believe from the evidence in the cause, that the defendant did kill the deceased Ephraim Hibler, as charged, and that he did so kill wilfully, deliberately and premeditatedly, and in malice, you will find him guilty of murder in the first degree.

"It is not necessary to prove the deliberation and premeditation for any particular length of time before the homicide took place, and if the jury believe from the evidence that John Roberts took the life of the deceased, and that before the killing, the said Roberts did maliciously design to commit the homicide upon the deceased, or any other person who attempted to arrest him, and also that at the time he killed the deceased he intended to do the deed, and that such killing was not done in the heat of passion, nor is not excusable or justifiable homicide, you will find the defendant guilty of murder in the first degree.

"In passing upon the malicious intent, it is lawful for the jury to consider the weapons used at the time of the homicide, and the manner of using them.

"If the jury believe from the evidence that witness Jones, or any other witness, has wilfully and knowingly testified falsely to any material fact in the cause, you are at liberty to reject the whole, or any part, of the testimony of such witness, inconsistent with the other truthful evidence in the cause.

"If you entertain a reasonable doubt of the guilt of the accused, you ought to acquit."

To the giving of which instructions by the court on its own motion, the defendant excepted.

The jury then found the defendant guilty of murder in the first degree.

The defendant then filed his motion for a new trial, which was overruled by the court, and to the ruling of which defendant excepted.

Defendant then moved a stay of proceedings, and asked an appeal to this court, which was granted.


THOMPSON & MAURO, for appellants.


I. That where an officer attempts illegally to arrest a person, and such attempt is resisted, and the officer is killed in the attempt, the killing is extenuated from murder to manslaughter. 1st Chit. Crim. Law, p. 23; 1 Russell on Crimes, p. 592; Whart. Am. Crim. Law, p. 277, 236, 266; Rev. Stat 1845, p. 347. An illegal arrest is such an unlawful act as is contemplated in sec. 12, art 2d, of crimes and pun., Rev. Stat., '45, p. 347.

II. The second instruction given by the court was calculated to mislead the jury. The words used by the court, to-wit, "or any other person who attempted to arrest him," were calculated to create in the minds of the jury that the nature of the crime would not have been affected, even though the arrest was illegal. Whereas, under the circumstances of this case, the court should have laid down the law in relation to the power to arrest, and instructed the jury, that if the facts in the case proved an 'illegal' attempt to arrest, they should convict of manslaughter, and not of murder

III. That persons cannot be arrested in this country but by the authority of the "law of the land." Art. 5th Amended Constitution of U. S.; sec. 8 of art. 13, Constitution of Missouri.

IV. That the law of the land in this country is : 1st. The constitution of the U. S., act of Congress, and treaties made in pursuance thereof. 2d. The constitution of Mo. and acts of the Gen. Assembly, not inconsistent with the foregoing. 3rd. The Com. Law of Eng., as

Roberts, alias Ward vs. The State.

dopted by the General Assembly of Mo. To which may be added in this case, 4th. The rdinances of the city of St. Louis, passed in pursuance to and in accordance with the owers delegated in her charter. State vs. Ledford, 3 Mo. R., p. 102; 1 N. H. Rep., p. 58

It seems then, that unless there is some law in existence, passed by competent authority, uthorizing the arrest of the appellants on the charge and under the circumstances of the at-empted arrest, that such arrest was illegal. We will enquire then, what the common law ule is in relation to arrest, and then see if the statute of Missouri, or any ordinance of St. ouis city, passed in pursuance of powers delegated, has changed the circumstances which ttended the one in question. It is then insisted—

V. That the power of police officers to arrest without warrant, is confined to cases when felony has been committed, or where there is a reasonable ground to suspect a felony has een committed, and that the party suspected was guilty—where a reasonable charge of fel-ny is made to them, or the hue and cry levied, and for such misdemeanors, breaches, &c., s may be committed in their presence. 2 Hale's J. C. p. 84, 88 and following; 1 Russell on imes, p. 595, 598 and following; Stevens Nisi Prius, p. 2127; Hawkins P. C., 3 vol., p. 129 d following; 4 Black. Com , 292; Findley vs. Pruit, 9 Port. Rep., 195; Holley vs. Mix, 3 Vend. Rep., 350; Eanes vs. State, 6 Hump. p. 53; Wakely ys. Hart, 6 Binney, 315.

From there authorities it appears that the power of police officers to arrest upon suspicion ithout warrant, is confined to cases where the commission of a felony is the inducement to rest. It was even doubted at common law whether a police officer could arrest unless a fel-y had actually been committed. "But," says Russell, (vol. 1, p. 595) "it has since been termined, that an officer may justify an arrest on charge of felony on reasonable ground of spicion, without a warrant." "He may justify," but upon him will lie the burden of roof, to show that there was "reasonable cause of suspicion," In this case there was no lony committed, nor any even suspected to have been committed.

And the suspicion must not be a mere causeless suspicion, but must be founded on preg-nt circumstances, to afford a justification; (Findley vs. Prewit, 9 Porter's Rep. p. 195,) d the reason of this rule is palpable. The safety of person and property requires, that ose accused of such grave charges should be apprehended without delay. The indictment escape by absconding is so strong, that otherwise apprehensions would be few. These asons, however, do not prevail in cases of slight offences, such as misdemeanors, &c.; and e law regards liberty to be so sacred a right, that for trifling breaches, it does not authorize rests without warrant, unless they are committed in the view of the officer; and in cases of rays it does not exist after the affray is over. 1 Rus. on cr. p. 599 and following; Confey . Henley, 2 Esp. Rep. p. 540· And there is no distinction as to the power to apprehend, tween one kind of misdemeanor and another; as, between breaches of the peace and fraud, t the rule is general; that after the commission of the misdemeanor, the power to apprehend ithout warrant ceases, (1 Russ. p. 601.)

Suspicion that a person has on a former occasion committed a misdemeanor, does not jus-y an arrest without a warrant. Fox vs. Gaunt, 3 B. and Ad. Rep. p. 789. That case is is precisely.

And in the case of U. S. vs. Hart, 1 Pet. C. C, Rep., which is relied upon by the State, it decided that while in the act of commission of a misdemeanor, and officer has the right to rest without warrant, thus by implication at least deciding that the power does not exist on ere suspicion. 1 Pet. C. C. Rep. p. 390.

It will be contended on the part of the appellee, that at common law, officers had power to rest night walkers without warrant. But it must be observed, that that power only existed here there was reasonable ground to suspect a felony. 1 Russ. p. 601; 2 Ld. Ray, 1296. At y rate it was a misdemeanor at common law to be a night walker, and the power to arrest when ught in the act will not militate against the rule we have laid down.

And where the power was exercised to arrest vagrants without warrant, it was derived om an act of parliament specially authorizing it. Thus showing that at common law, it as otherwise. 1 Russ.; note to p. 602.

Roberts, alias Ward vs. The State.

The only case under the statute of this State, where an arrest is authorized without war-rant, is where a felony has been committed, and the offender attempted to escape. Rev. Stat. 1845, art, 2 of Prac and Proc. in crim. cases, and sec. 32 of said article.

VI. The State having defined vagrancy, and affixed a penalty to the same, and having for the arrest of offenders, the city, in the absence of any special power conferred in its charter, has no authority to legislate in conflict therewith. Rev. Code, p. 1070.

VII. That the instruction of the court in the case of Jones in relation to arrest was erroneous for the reasons given above and the authorities quoted concerning arrest.

LACKLAND, for the State.

I. The court did not err in admitting the dying declarations of the dec'd., Hibler. A sufficient foundation for their introduction had been laid. All hope of recovery had expired. 1 Greenl Ev. § 158; Wheat. Cr. L. 179.

II. The second instruction ought not to have been given. It does not contain good law and is calculated to mislead the jury. It proceeds upon the idea that a police officer can only lawfully arrest when authorized by written warrant, or when an offence is committed in his presence. There are many other cases in which an arrest without warrant is legal. Evans vs. State, 6 Hump., 53, Taylor vs. Strong & Blanchard, 3 Wend., 384; Wakely vs. Hadkal, 6 Binn., 318; Mayo vs. Wilson et al. 1 N. Hamp. 53.

III. Admitting that the arrest of defendant was illegal, it does not necessarily follow that the offence is other than murder in the first degree. If the arrest were illegal, it may be considered as a legal provocation, and passion may be a reasonable inference or presumption of law. This is however, but a mere presumption or inference of law, which may be rebutted by proof as the presumption or inference of malice, or any other legal presumption, or inference. And it is contended that in this case the presumption or inference of passion from the supposed illegal arrest, is disproved by the witness, who states that defendant took his time and shot deliberately, and other evidence in the cause. It is thoughtless violence, rash and unrelenting rage that extenuates the killing. Com. vs. Daugherty, 1 Brown Rep. appendix 20; Com vs. Green, 1 Ash., 298.

The court in the 11th and 12th instructions correctly gave the law governing the case to the jury, upon the question of premeditation and deliberation. Baver vs, State, 5 Mo. 364 ; Mulatto Bob vs. Commonwealth, 4 Dallas 145 ; Porm vs. McFail, Addison's Penn. Rep. 255 ; Swan vs. State, 5 Hump. 136 ; Dale vs. State, 10 Yerger 551 ; Whitford vs. Com. 6 Rand. Va. Rep. 721 ; Anthony vs. State ; 1 M. 269 ; Shoemaker vs. Ohio ; 12 Ohio 43 ; People vs. Cranch, 13 Wend. 159 ; Com. vs. Green, 1 Ashm. 289 ; Com. vs. Dougherty, 1 Brown Rep. app. 18 ; State vs. Cheatwood, 2 Hill's S. Car. Rep. 464 ; State vs. Turner, Wright Rep. 30.

IV. In the 13th instruction the court instructed the jury that in passing upon the question of malice, they might take into consideration the weapon and the manner of using it. There is no error in this instruction. 2 How. Miss. Rep. 655 ; Roscoe Crim. Ev. 683, 728 ; 1 Greenl. Ev. sec. 18 ; 1 Russ. on Crim. 658, 660 ; Rex vs. Dixon, 3 M. & S. 15 ; 1 Hale P. C. 440, 441.

V. The State contends that the arrest was legal upon the following grounds, to wit:

1st. The States in virtue of their general police powers possess full jurisdiction to arrest, restrain and remove beyond their borders idlers, vagabonds and paupers. Prigg. vs. Com. of Penn. 16 Pet. 625. The State of Missouri as an independent sovereignty has the power to delegate the same authority to the city of St. Louis, and has done so. 38 Sub. Div. 1st sec. of 3d art. of city charter, passed 8th Feb., 1843, in the grant of power to said city, to regulate the police, &c. This grant of power authorizes the city to legislate upon the subject of vagrancy, and punish vagrants. Burty vs. city of St. Louis, 11 Mo. 61.

The 11th sub-division of same section and article of the charter grants to the city power "to establish, support and regulate night watch and patrols."

Roberts, alias Ward, vs. The State.

Under the provision of the charter first mentioned, the city council has defined vagrancy, and fixed the punishment. Ordinance No. 2384, passed March 29, 1850.

Under the provision of the city charter last mentioned, the city has established a police department; have appointed watchmen and defined their duties. Ordinance No. 2410, passed 0th April, 1850. The proof shows that defendant was a vagrant and a suspicious person, as escribed by the first section of ordinance 2384, and the deceased being a watchman, it was made his duty by 12th section of ordinance 2410 to arrest defendant if found in his district.

Again, by the ordinance No. 2410, the city marshal is made ex-officio chief of the police and has a right to command the private watchmen, and it is their duty to obey, and the chief f police did command deceased to arrest defendant, and the arrest is therefore legal, because t was in pursuance of the city ordinance. Wharton Cr. Law 267·

2nd. The offence of vagrancy, as defined by said ordinance No. 2384, is an offence of omission as well as commission, "as remaining in a state of idleness without visible means of support," &c. This is a continuous act, which constitutes the offence, and was in part committed in the view of the deceased, and he therefore had the right, and it became thereby his duty to arrest him, as for the breach of an ordinance in his view. And in such cases the officers may arrest without warrant. Taylor vs. Strong & Blanchard, 3 Wend. 384. In Mayo vs. Wilson et. el. 1 N. Hamp. 53, it is virtually decided that an officer may arrest any one without a warrant whom he may suspect of being guilty of a misdemeanor.

3d. It is contended by the State that this arrest is legal, because by common law a night watchman may without warrant arrest night walkers at unreasonable hours. Mayo vs. Wilson, et. al. 1 N. Hamp. 53; Lawrence vs. Hedgar, 3 Taunt. 14.

Defendant was properly arrested, and then discharged upon his promise to leave the city within three days. He violated his promise, and was then liable to arrest under the old charge, as well as for any subsequent violation of the vagrant ordinance. Com. vs. Hastings Met. 259.

As night watchmen have to make their arrests in the night time, when warrants cannot be had out, it would render them entirely inefficient in the performance of their duties if they were not permitted by law to arrest without warrant. City council vs. Payne, 2 Nott & Mcord, S. C. Rep. 475.

As night watchmen are not authorized by statute or by order to execute any warrant, to earch or seize, it follows that if they have not the right by virtue of their office to arrest without warrant under the ordinances of the city, they can only arrest under such circumstances as would authorize a private citizen to arrest, and as to matters of arrest the watchman is no officer at all.

It is contended by the defendant that arrest by virtue of the ordinances and principles of the common law, above referred to, without a written warrant in violation of the 13th section article of the constitution of Mo. which provides that no warrant to search any place, or seize any person, &c., shall be issued, unless it describe the place, &c., to be searched, or person to be seized, and unless issued upon probable cause, supported by oath or affirmation. This provision cannot be construed to mean that there can be no legal arrest without a warrant, issued upon probable cause, supported by oath or affirmation. It does not say that no one shall be arrested unless by virtue of a written warrant. It seems clear that this is only a provision in our constitution, to guard against an abuse of warrants authorizing search and seizure, by preventing general warrants (warrants not specifying the place to be searched or person to be seized) of such character to be issued, and is only a recognition of a common law principle, as contained in magna charter, and the bill of rights. Mayo vs. Wilson et al. N. Hamp. 53; Wakley vs. Hart et al., 6 Binney Pa. Rep. 318.

The officers of justice are bound to assist each other in their several departments. Many ses will not admit of the delay to obtain a warrant. It is the policy of the law to make the lice effective. Com. v. Deacon, 8 S. & R. Pa. 49.

A night watchman is often called upon in the night time to arrest for a misdemeanor upon e information of a private person not under oath; and if he were compelled first to obtain

Roberts, alias Ward, vs. the State.

warrant, the law and ordinances of the city would cease to be a protection to the citizens, because to obtain warrants at such unreasonable hours is almost impracticable, and would certainly render the law ineffective by giving ample opportunity for the offender to escape. It is for this reason the law allows sheriffs, constables and particularly watchmen, to arrest without warrant, and if this authority be abused the offender is liable to indictment, and the sufferer can obtain relief by *habeas corpus*, and damages by action for false imprisonment. Com. vs. Deacon, 8 S. & R. 49.

" A constable who had verbal orders from the magistrates to apprehend all thimble-riggers, attempted to apprehend the defendant and his companions, who were playing at thimble-rig in a public fair, and succeeded in apprehending one of his companions, whom the defendant rescued, and afterwards in the evening seeing the defendant in a public house, endeavored to apprehend him, telling him that he did so for what he had been doing in the fair ; the defendant escaped into a privy, and the constable called others to his assistance, broke open the privy, and attempted to apprehend the prisoner, who stabbed one of the party. It was held that the constable had an authority to apprehend the defendant." Wharton's Criminal Law, 267 ; Rex vs. Gardner, 1 Mood C. C. 390. Deceased informed the defendant that he was an officer ; said it was his duty to arrest ; called upon by-standers to assist him, and displayed his baton or official staff. This is a sufficient notice of the official character of the deceased. Wharton's Criminal Law, 268.

The city marshal being ex-officio chief of the police, ordered the deceased, Hibbler, to arrest defendant. The law in such cases presumes that the marshal acted within the scope of his authority, and simply did his duty in ordering such arrest, and the law therefore presumes, as the proof shows, that there was a lawful charge then pendidg against said defendant in the recorders court, and that it was the duty of said marshal to have defendant arrested to answer to the same.

NAPTON J., delivered the opinion of the court.

No question arises on this record, except the one growing out of the refusal of instructions asked and the giving of others in their stead.

The court gave no instruction to the jury in relation to the power of an officer to arrest without warrant, and this omission is the matter principally complained of. It cannot be denied, that the legality of the defendant's arrest was a material question in determining the character of the homicide. It is well established, that where persons have authority to arrest, and are resisted in the proper exercise of such authority, and killed, such homicide is murder in all who have taken part in such resistance. Foster 270; 1 Hale P. C., 465. On the other hand, where the arrest is illegal, the offence is reduced to manslaughter. Comm'th vs. Drew, 4 Marsh. R., 396. Three things it is said, must be attended to in matters of this kind; the legality of the deceased, authority, legality of the manner in which he executed it, and the defendants knowledge of that authority. It is unnecessary here to dwell upon the two last requisites, since the testimony was clear that the defendant was duly apprised of the official character of the deceased, and that the arrest was conducted with no unnecessary violence and

Roberts, alias Ward vs. The State.

in a way to which no just exceptions could be taken. 'The important question was, whether the deceased police officer, who arrested the defendant, had any authority for so doing.

By the common law, arrests were permitted without warrant, in cases of felony, or suspicions of felony, and in cases of breach of the peace and other misdemeanors committed in the presence of the officers, So at the common law, a constable might arrest night walkers, or persons reasonably suspected of felony. This power of arresting without warrant has also been extended to many other cases in England by statute. These statutes authorize constables and other peace officers to apprehend evil disposed persons, suspected persons and reputed thieves. The stat. 32 Geo. 3, C. 17, empowers constables, watchmen, &c., to apprehend reputed thieves, frequenting the streets, highways and avenues of public resort and convey them before a magistrate.

The ordinance of the city of St. Louis in relation to the police of the city contain some provisions very similar to the foregoing. The ordinance No. 2364 declares:

"All able bodied persons, who not having visible means to maintain themselves, lives idly, without employment; or, are found loitering or rambling about, or wandering about and lodging in groceries, tippling houses, beer houses, out-houses, sheds or stables, or in the open air and not giving a good account of themselves; or wandering about and begging; or going about from door to door begging; or placing themselves in the streets or other thoroughfares, or in public places to beg or receive alms; all keepers or exhibiters of any gambling table or device; all persons who for the purpose of gaming, travel about or remain on steamboats, or go from place to place; and all persons, upon whom shall be found any instrument or thing used for the commission of burglary or for picking locks or pockets, and who cannot give a good account of their possession of the same, shall be deemed vagrants."

The second section of this ordinance says, that any such person found in this city shall be arrested and taken before the recorder, &c., to be tried.

The ordinance No. 2410 provides: "It shall be the duty of the privates (policemen) to be punctual at roll call—to obey punctually the order of the chief of the police; &c. They shall preserve order and peace and quiet throughout the city—they shall arrest all persons found under suspicious circumstances, and who cannot give a good account of themselves, and convey all persons so arrested to the station house, &c. They shall have authority to enter any house, enclosure or other place where breach of the peace or crime, or breach of ordinance has

10

been or is being committed, and to arrest the offender or offenders, &c." We cannot doubt that it was the design of these ordinances to empower the police officers of the city to arrest, in specified cases, without warrant. It is quite apparent that such regulations would be inefficient in a large city and of little practical utility, if a formal warrant or complaint were in all cases essential to authorize an apprehension. Where persons are found liotering about and lodging in groceries, tippling shops, &c., or begging from door to door, or with burglarious instruments upon them, the officer so finding them is required to arrest them and take them before the recorder.

The evidence in this case tended to show that this arrest was made under instructions from the marshal who is head of the city police—that this officer's order was given, because the defendant had given his promise upon being discharged from an arrest for vagrancy to leave the city within a certain time and had not kept it; because, in the opinion of the marshal, the defendant was a suspicious and dangerous character; and because the marshal believed him to be a vagrant.

It is quite apparent that the breach of promise by defendant did not of itself warrant the arrest. The agreement between the city authorities and the defendant was not outhorized by any law or ordinance, and was void, and a breach of it was no offence.

It may be, however, that the defendant was a suspicious character; that he was a night walker; that he was found with burglarious instruments upon him; or in the actual commission of some offence against the peace of the city or some ordinance made in pursuance of the charter. It was the province of the jury to determine this, under proper instructions from the court. If the jury should be of opinion that the arrest was made solely because the defendant had committed a breach of promise with the city officers by remaining in the city limits beyond a stipulated time, the arrest was illegal.

We are of opinion that the legality or illegality of the arrest in this case might affect the degree of guilt of the prisoner, although we do not undertake to say that under the circumstances of this case, such would be the result. The general rule is, that a homicide committed in resisting an illegal arrest is manslaughter merely. Yet there may be sufficient evidence of express malice, even in case of an illegal arrest to ustify a finding of murder. R. V. Stockley 1 East P. C., 310; R. V. Justis Futer, 135; 1 Hale P. C., 465.

It is not competent for this court to say, that the arrest in this case as legal or illegal, nor is it in our power to determine that in either

event, the facts were sufficient to make out a case of express malice. This is for the jury under instructions from the court.

The third instruction given by the court was proper enough; but it will be observed, that an attempt to coerce a man's person is not upon the same foot in the eye of the law as a trespass upon his property. In the latter case, the use of a deadly weapon is sufficient to constitute the killing a murder, but this is not the law in an illegal arrest of the person. Comm'th vs. Drew, 4 Mass. R., 391.

The second instruction given by the criminal court must have been based on the assumption that the arrest was a legal one; although the court had declined giving any instruction relative to the legality or illegality of the arrest. The question, whether the homicide was committed nnder the prosecution of an illegal arrest, or not, was not submitted to the jury; although it was presented in several instructions asked on behalf of the defendant.

There was certainly very strong proof in the case to show great deliberation on the part of the deceased, and although we might not anticipate a different result upon a second trial—we feel it our duty to order one, on the ground that the instruction of the court did not put the jury fully in possession of the law applicable to the case.

Judgment reversed and cause remanded.