CASE 15—INDICTMENT—APRIL 27.

## Creighton v. Commonwealth.

### APPEAL FROM SCOTT CIRCUIT COURT.

IN RESISTING AN UNLAWFUL ARREST the citizen is not justified in
taking the life of the trespasser, unless it is necessary to save his
own life or to save his person from great bodily harm.

A. H. WARD, JAMES E. CANTRILL AND JAMES F. ASKEW
FOR APPELLANT.
Brief not in record.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.
Brief not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The case under consideration has been heretofore
in this court, and the judgment of conviction re-
versed.

The appellant was indicted, tried and convicted
of manslaughter for the killing of Ambrose Wilson.

It is claimed by the accused that Wilson attempted
to arrest him for a misdemeanor when he was not
a peace officer, and had no authority to take charge
of his person or make the arrest, and that in the
unlawful conduct of Wilson originated the alterca-
tion resulting in his death. This court held in the
former opinion (83 Ky., 142), that the deceased was
not a peace officer, and in attempting to make the
arrest was guilty of a trespass, and that this fact
should not have been excluded from the considera-
tion of the jury.

On the second trial, from which the present appeal
is prosecuted, a still more interesting question is

presented, and one not heretofore determined by this court, involving not only the right of the *deceased* ~~prisoner~~ to resist the unlawful arrest, but the extent to which that resistance may be carried.

It is maintained by counsel for the accused that the liberty of his client being in peril, with the hand of the trespasser upon him, that in order to prevent the illegal arrest he had the right to take the life of Wilson if he had reasonable grounds to believe and did believe that this was the only means of protecting his person from the assault.

That the resistance may be carried to the extent of complete and full protection, and in order to such a result, the accused had the right to take the life of the wrong-doer, if it could have been prevented in no other way.

The right of personal liberty is one of the absolute rights of every freeman, and any unlawful restraint upon this right may be resisted. This doctrine is elementary; but we are not disposed to sanction a principle that would justify taking human life to prevent an unlawful imprisonment or an unlawful seizure of the person.

A trespass upon the person with an intent to commit a felony, or to inflict upon the party assaulted great bodily harm, may be resisted, and to prevent the felony or the infliction of great bodily harm, the life of the wrong-doer may be taken. Before this can be done the party attacked or assaulted must believe and have reasonable grounds for believing, not that the taking of human life is necessary to prevent the arrest, but that it is necessary to

prevent the felony or the great injury to the person of the accused; not the disgrace or the injury from the unlawful imprisonment, but an actual violence and bodily harm.

The attempt to make the arrest by laying hands gently upon the accused, or in a rough manner, even by one of much greater strength, and when the physical power of the party assaulted is insufficient to resist the arrest, will not justify the taking of human life.

It is at last only a trespass on the person and liberty of the citizen, and if he can resist such an attack by taking the life of his assailant, we see no reason why in every assault and battery, where the stronger attacks the weaker man, the latter may not take the life of his assailant, although his own life may not be endangered.

In East's Pleas of the Crown, first volume, page 233, it is said: "If a man be injuriously restrained of his liberty, as where the creditor stood at the door of his debtor with a drawn sword to prevent him from escaping while he sent for a bailiff to arrest him," the debtor kills the creditor, he is guilty of manslaughter.

In Noles' case, reported in 26 Alabama, 31, where the accused was improperly restrained of his liberty, it was held that "he had no right to kill to prevent a mere trespass which is unaccompanied by any imminent danger of great bodily harm or felony, and which does not produce in his mind a reasonable belief of such danger."

In the case of Commonwealth v. Drew, 4 Mass.,

391, the same doctrine has been announced, and the substance of all the decisions upon the subject, based on the elementary authorities, is that an unlawful arrest or an attempt to make an unlawful arrest is to be placed on the same footing as any other non-felonious assault, or as a common assault and battery. For an illegal arrest the party has his remedy by *habeas corpus*, and by an action for false imprisonment. (See note to Commonwealth v. Drew, in Horrigan & Thompson's Cases on Self-defense, 713.) An unlawful arrest is a trespass and not a felony. (State v. Oliver, 2 Houston, 606; Bennett on Crimes, first volume, 784; State v. Craton, 6 Iredell, 164.)

In Oliver v. The State, 17 Alabama, 587, where the question as to the forcible taking of the children of the accused under a statute making it a felony was involved, the court, in discussing that question, said that the court below justified the accused in his charge to the jury in taking human life "without regard to the fact whether the act was done to prevent a felony or not;" and further held, that "to justify the taking of life there must be an imperious necessity to prevent the commission of a felony or great bodily harm."

This court, in the former opinion, said, that "if the deceased was not an officer *de facto* or *de jure*, the accused had no right to use more force than was necessary to protect himself from the assault of the deceased, *and certainly no right to take the life of the deceased, unless it was necessary to save his own life or his person from great bodily harm;*" and again: "If (the accused) guilty of a breach of

the peace by reason of the altercation, or of a felony by reason of the use of more force than was necessary for the protection of his own person, then the power of the Commonwealth could be rightfully asserted.'' )

In resisting the arrest—and this the accused had the right to do—he could not take the life of Wilson unless his own life was in danger, or to save his person from great bodily injury. If either fact existed, or if he had reasonable grounds to believe, and did believe, that he was in imminent peril of losing his life, then, for his own protection, he had the right to take the life of the deceased.

The right of protection against all forcible attacks upon the person belongs to every man; but the extent to which this may go, or the manner of defense, is an important inquiry. Human life can not be taken unless to protect the life of another, or prevent the infliction of some great bodily injury, and the degree of force to be used must be determined by the character of the attack made. ''Although a man will not be justified, then, if he kill in defense against an illegal arrest of an ordinary character, yet the law sets such a high value upon the liberty of the citizen that an attempt to arrest him unlawfully is esteemed a great provocation, such as will reduce a killing in the resistance of such an arrest to manslaughter.'' (Commonwealth v. Carey, 12 Cushing, 246; Roberts v. State, 14 Mo., 138; 1 Hale's Pleas of the Crown, 457; note to Horrigan & Thompson's Cases on Self-defense, page 816.)

Bishop says: ''The attempt to take away one's

liberty is not such an aggression as may be resisted to the death. Nothing short of an endeavor to destroy life will justify the taking of life, is a doctrine that prevails in such a case." (1 Bishop's Criminal Law, section 868.)

At first impression it would seem that in the attempt to deprive one wrongfully of his personal liberty, the party assaulted should be permitted to use all the force necessary to release himself from the unlawful arrest, or to prevent the imprisonment; *for life being valueless without liberty*, the modes of defense for the preservation of human life should be allowed for the maintenance of human liberty.

Mr. Bishop says: "The reason why a man may not oppose an attempt on his liberty by the same extreme measures permissible in an attempt on his life, may be because liberty can be secured by a resort to the laws." (1 Bishop's Criminal Law, section 868.)

There are cases in which the party subjected to the unlawful arrest may resist, even to taking the life of the wrong-doer. Where the attempt, says Mr. Bishop, is to convey one by force beyond the reach of law, or to carry him out of the country, in such extreme cases the party would be justified in resisting to the death of his adversary.

In the present case, the court below told the jury "that the arrest of the accused was unlawful, and that the latter had the right to resist the arrest by the use of such force, but only such force, as was necessary, or seemed to him, the defendant, in the exercise of a reasonable judgment, to be necessary to

Creighton v. Commonwealth.

repel the force used by Wilson in attempting to arrest him; and if the jury believe from the evidence that the defendant, at the time he shot and killed Wilson, believed, and had reasonable grounds to believe, that he was then and there in immediate danger of losing his own life, or of great bodily harm at the hands of said Wilson, and that to shoot said Wilson was necessary, or seemed to the defendant, in the exercise of a reasonable judgment, to be necessary to avert the danger, real or to him apparent, as before stated, the jury should find him not guilty."

Learned counsel for the defense, in response to the argument by the attorney for the State, insisted that his client had the right to use such force, and no more, as was necessary to resist the arrest and prevent an unlawful imprisonment, and that the danger to life or the fear of great bodily harm should have been eliminated from the instruction. However persuasive his argument, and conceding that any other arrest and imprisonment than that which is in accordance with law and necessary for the ends of public justice, is inconsistent with civil liberty, still the enjoyment of the absolute right of personal liberty can not be asserted by taking the lives of those restraining its exercise, unless the attempt to prevent its enjoyment endangers the life of the citizen, or subjects him to great bodily harm.

The law has merely said to the citizen, that, although your liberty has been restrained, you can not deprive the aggressor of his life in order to regain it, unless you are in danger of losing your own life.

Such was the instruction given by the court below, and the accused having been found guilty of manslaughter only, we perceive no reason for disturbing the judgment, and the same is now affirmed.