CASE 104—PROSECUTION AGAINST JAMES MANN, FOR MURDER—OC-
TOBER 19.

# Mann v. Commonwealth.

APPEAL FROM BREATHITT CIRCUIT COURT—ROBERT RIDDLE, CIRCUIT
JUDGE.

DEFENDANT CONVICTED OF MANSLAUGHTER, AND APPEALS. REVERSED.

ARREST—WARRANT—PRIVATE CITIZEN—RIGHT TO SERVE—SELF DE-
FENSE—INSTRUCTIONS.

1. Under Cr. Code Prac. secs. 35, 37, providing that a peace officer
may make an arrest under a warrant or without a warrant when
a public offense is committed in his presence, or when he has
reasonable grounds for believing that the person arrested has
committed a felony, and that a private person may make an
arrest when he has reasonable grounds for believing that the
person arrested has committed a felony, a peace officer has no
authority to deputize a private person to arrest another under
a warrant.

2. A peace officer, without authority, directed C., a private person,
to arrest defendant under a warrant, and such person induced
G. to go with him to effect the arrest. There was evidence that
C. and G. drew their pistols and caught hold of defendant with-
out notifying him that they had a warrant for his arrest, and that
G. shot defendant, who thereupon fired, killing G. HELD, that
the evidence justified an instruction that if, resisting arrest, de-
fendant had reasonable ground to believe, and did believe, that
he was in imminent danger of death or great bodily harm, and
there was to him no apparent safe way to avoid the same except
to shoot and kill deceased, and he shot for that purpose, the jury
should find him not guilty, and that he could not kill the de-
ceased unless he was in actual or apparent danger of
death or great bodily harm at the hands of the deceased, and it
appeared to him necessary, in the exercise of a reasonable judg-
ment, to save himself.

POLLARD & REDWINE AND R. L. GREENE, FOR APPELLANT.

1. A sheriff or other ministerial officer has no authority to
deputize a private citizen to execute a warrant of arrest. Salis-
bury v. Com., 79 Ky., 428.

Mann v. Commonwealth.

2. A private person may as provided by section 37, Criminal Code, make an arrest when he has reasonable grounds for believing that the person arrested has committed a felony, but in no other case. Begley v. Com., 22 R., 1526; Wright v. Com., 85 Ky., 123.

3. One who is not a peace officer, either *de jure* or *de facto* does not by assuming to exercise the duties of such an officer acquire any more authority to make an arrest than any other private individual, and one who kills such a person when resisting arrest by him is to be tried as if the deceased had not been acting as an officer. Creighton v. Com., 83 Ky., 142; Hughes v. Brown, 41 S. W., 244; 25 Am. & Eng., p. 279.

N. B. HAYS AND L. MIX, FOR APPELLEE.

1. Subsec. 2, of sec. 47, Civil Code, provides that "Summons may be issued by any person appointed by the officer to whom it is directed by an endorsement on the summons." Sec. 4562, Ky. St., provides that "a sheriff may by writing empower any person to execute an original or mesne process, the person so appointed shall endorse his action on the instrument empowering him and make affidavit to the truth of the endorsement," etc. Sec. 2234, Ky. Stat., provides "that process from any court may in a civil, penal or criminal case be executed by the jailer of the county, and in all such cases the law applicable to the sheriff shall govern the jailer."

We submit that under these provisions that jailor has the same authority to appoint a special bailiff to arrest a prisoner. Fleetwood v. Com., 80 Ky., 1; Mockabee v. Com., 78 Ky., 383.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

The appellant, James Mann, was indicted for the murder of Levy Gross, and, being put on his trial before a petit jury, was convicted of manslaughter, and his punishment fixed at confinement in the penitentiary for a period of ten years. From this judgment he appeals.

The facts leading up to the homicide are as follows: Appellant had been convicted of selling liquor without a license, and whilst confined in jail on a *capias* issued on the judgment he escaped from custody, whereupon the jailer

procured a warrant for his arrest. This warrant was placed in the hands of one Henry Cundiff, a private citizen, living in the same neighborhood of the defendant, and he was authorized by the jailer, in writing on the back of the warrant, to arrest the appellant. In pursuance of this authority, Cundiff induced the deceased, Levy Gross, to go with him to the home of appellant for the purpose of effecting his arrest. The following statement as to the facts of the homicide is made by Cundiff: "Gross and I rode together to near defendant's house, when Gross got off his horse, and I rode on to the house, and told the defendant that I wanted to see him; to come into the house. I asked him to sell me some whisky. He said he had no liquor. At this point appellant's father, who was present, remarked, 'These men have come to arrest you.' In answer to this suggestion I said that I had nothing against appellant. We then walked out into the yard, and I told defendant that I had a warrant for him, and he must go to Jackson with me. Defendant immediately drew his pistol and shot me in the right arm. The fight then began, and I shot the defendant through the arm, and called upon Gross to come to my relief, and assist me in making the arrest. He came towards us, and the defendant jerked loose, and shot Gross twice, the last shot killing him instantly." The defendant gave the following version of what transpired, and his statements are corroborated by the testimony of a number of other witnesses: "Cundiff came to my house, and said he wanted to see me, and asked me to come in the house. I went in with him, and he asked me to sell him some whisky. I told him that I had none. He then remarked that I need not be afraid, as he would not indict me. I responded that I did not have any whisky. We then both walked into the room in which my father was sitting, who remarked, 'These men have come

to arrest you.' Cundiff replied that he had no warrant for
me. He and I then walked out doors, and he puts his right
arm around my neck, and put his pistol against the back of
my head and fired, striking me in the back of the neck. I
immediately drew my pistol, and tried to shoot him, but he
caught me by my arm, and we struggled for a few moments.
He then directed the deceased, Levy Gross, to shoot me.
Cundiff at the time had my hand in which my pistol was fast
under his arm. Gross approached at this moment with his
pistol leveled, and fired, striking me in the right groin. I
then jerked loose from Cundiff and fired on Gross. Cundiff
at the same time shot me twice in the back. I did not know
that Cundiff had a warrant for me, and he did not tell me
that he had one, or show me any."

In addition to the usual instructions in such cases, the
court gave the following instruction: "The court further
instructs the jury that if they believe from the evidence be-
yond a reasonable doubt that Henry Cundiff had in his pos-
session a warrant for the arrest of the defendant, and the
one read to the jury, it was his duty to execute same by ar-
resting defendant, and to use such force and to have such
assistance as was reasonably necessary to that end. And the
court further instructs the jury that it was the duty of the
defendant to submit to such arrest, and, if the jury believed
from the evidence, beyond a reasonable doubt, that said
Cundiff had summoned Levy Gross to assist him, and they
were in good faith attempting to arrest defendant, and that
the defendant knew at the time of the attempted arrest that
Cundiff was an officer, and had the warrant for his arrest,
and if the defendant with such knowledge killed Gross, they
will find him guilty of murder, and fix his punishment as
defined in instruction No. 1."

The main question upon the appeal is whether the jailer

had legal authority to deputize Cundiff to arrest the appellant. The Criminal Code of Practice provides as follows:'

"Sec. 35. An arrest may be made by a peace officer or a private person.

"Sec. 36. A peace officer may make an arrest: First—In obedience to a warrant of arrest delivered to him. Second—Without a warrant when a public offense is committed in his presence or when he has reasonable grounds for believing that the person arrested has committed a felony.

"Sec. 37.. A private person may make an arrest when he has reasonable grounds for believing that the person arrested has committed a felony."

In Salisbury v. Commonwealth, 79 Ky., 425, 3 R., 111, the sheriff of Letcher county had in his hands warrants for the arrest of one Morris, charged with a felony. He deputized one Banks, a private citizen, in writing on the back of the warrant, to execute it by arresting Morris. Banks summoned Salisbury to assist him. In attempting to arrest Morris, he was killed. Salisbury, being put upon his trial, relied upon the fact that he had been summoned to assist Banks in making the arrest, and had killed the deceased in attempting to execute the process, which had been delivered to him by the sheriff. In discussing the provisions of the Code quoted supra in that case, this court said: "There is no provision of the Code authorizing any other person than a peace officer to make an arrest in obedience to a warrant of arrest. Hence the authority to execute the warrant attempted to be conferred by the sheriff, Ambury, upon Banks, a private person, was illegal, and of itself furnished no protection to Banks and the appellant. Therefore the summons of the appellant by the sheriff and by Banks to aid the latter in making the arrest was illegal, because none but an

officer making an arrest may summon a person to aid in it." The doctrine of this case was followed in Wright v. Commonwealth, 85 Ky., 123, 8 R., 718, 2 S. W., 904, and Begley v. Commonwealth, 60 S. W., 847, 22 Ky. Law Rep., 1546. It therefore follows that the jailer could not legally deputize a private citizen to execute a warrant of arrest, and Cundiff's attempt to arrest appellant pursuant to such authority was unlawful, and stands upon the same footing as any other assault and battery. And appellant was not bound to yield thereto, but might resist force with force; but he was not authorized to go beyond the line of force proportioned to the character of the assault, or he in turn became a wrongdoer. See 2 Ency. of Law (2d Ed.), 909; Creighton v. Commonwealth, 84 Ky., 103, 7 R., 785, 4 Am. St. Rep., 193; Bates v. Commonwealth, 16 S. W., 524, 13 Ky. Law Rep., 132; Id., 19 S. W., 928, 14 Ky. Law Rep., 177. The evidence in this case justified an instruction that if, in resisting arrest, appellant had reasonable ground to believe and did believe that he was in imminent danger of death or great bodily harm at the hands of Gross, and there was to him, the defendant, at the time no apparent safe way to avoid such death or great bodily harm except to shoot and kill Gross, and he shot for that purpose, they should find him not guilty, on the ground of self-defense and apparent necessity. But they should also have been instructed that he could not kill Gross unless he was in actual or apparent danger of death or great bodily harm at the hands of the deceased, and that it appeared to him necessary, in the exercise of a reasonable judgment to save himself. See Hughes v. Commonwealth (19 R., 497), 41 S. W., 294.

For reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.