EMILY BROCK, Respondent, v NICHOLAS COX, Administrator, Appellant.

### Kansas City Court of Appeals, December 2, 1889.

Implied Contracts: RULE AS TO, BETWEEN CHILD AND PARENT. Where a mother, on account of her infirmities, leaves her own home and goes to that of her daughter, who nurses and cares for her during her last sickness, the parties are not to be regarded as strangers so as to raise a presumption of a promise on the part of the mother to pay for such service of the daughter, and the law in such case following the dictates of humanity will ascribe the care

and attention of the daughter to duty and affection, rather than the expectation of compensation; and, in an action to recover for such service, it devolves upon the daughter, in the absence of express promise, to show by testimony the intention on the one side to pay, and, on the other, to receive pay in order to establish an implied promise.

*Appeal from the Maries Circuit Court.* —HON. RUDOLPH HIRZEL, Judge.

REVERSED.

Statement by the court.

This action was originally brought in the probate court of Maries county upon the following statement, viz.:

"Estate of Eliza Robinson, deceased,

"In acc't with Emily Brock, wife of Peter Brock, Dr.

"To care and attention, nursing and waiting on deceased, from July 31 to June 15, 1887, at the rate of thirty dollars per month—eleven months and fifteen days—as wages of her separate labor, $345.00."

There was a trial in the probate court, and an appeal to the circuit court, where plaintiff to support her case introduced evidence tending to show : —

That the plaintiff was the daughter of said Eliza Robinson, deceased, who was about sixty-seven years old at her death. That from July 31, 1886, till June 15, 1887, the date of her death, deceased lived with plaintiff. That during that time deceased was infirm and diseased, having been afflicted with ulcers in and about her throat, during most of the time required almost constant care and attention, and that thirty dollars per month was a reasonable price for the care, nursing and attention which she received from plaintiff.

That prior to said July 31, 1886, the deceased had lived by herself in the town of Vienna, and plaintiff had resided with her husband on a farm fifteen miles distant, and deceased up to that time had not been a member of

plaintiff's family, nor lived with her. That, at the time she went to the home of plaintiff to live, Mrs. Robinson became so diseased and helpless that she could not live by herself and could not care for herself. That plaintiff was living with her husband while her mother was there.

Witness Mathews testified : "Have known plaintiff and her husband for seven years. She trades and deals by herself and supports herself. Mr. Brock is seldom at home. She runs the farm and buys everything in her own name, and does the work. Plaintiff's mother was very sick, quite helpless toward the last, and required great attention. The odor of her wounds was very offensive. Plaintiff attended to her well, and kept everything clean. One dollar per day would be a reasonable compensation for her work. Don't know that plaintiff ever slept in another house or separated from her mother. Old lady was there about a year, I reckon."

Witness Shockley testifies: "That sometime in July, 1886, he saw deceased at her then home in Vienna, and she told him that Mrs. Brock ( plaintiff ) wanted her to come and live with her ( plaintiff ), and she ( deceased ) believed she would go. That she was old, and plaintiff had no children, and that was the best place for her. Mrs. Brock managed the farm mostly. Last year she hired a man to run the farm. She and her husband were separated for some time. He was loafing. They separated entirely after the old lady's death, and he then came back in the winter following. In winter he generally stayed at home and in summer was generally absent."

Witness Rachel Smith testified: "That a short time before July 31, 1886, she was at Mrs. Robinson's at Vienna, and she ( Mrs. Robinson ) said that Em. ( meaning her daughter, the plaintiff ) wanted her to come and live with her, and she was going. That, about July 31, witness heard Mrs. Brock ( plaintiff ) say to her

mother, 'Ma, come go home with me and I will take care of you as long as you live.' Mrs. Robinson told me twice that she wanted to go to Mrs. Brock's to live, that Mrs. Brock had no children, and would take good care of her."

The defendant then asked the court to instruct the jury as follows:

"The court instructs the jury that no express promise has been proven to pay for the services alleged to have been rendered for her mother by the plaintiff, and the law will not imply a promise, unless circumstances are shown from which a jury may infer that it was the intention of the one party to charge, or the other to pay, for the same. That no such circumstances have been shown in this case, and your verdict will be for the defendant." Which was by the court refused.

Whereupon the defendant introduced the following evidence:

Nicholas Cox testified for the defendant: That he was the administrator of the estate of deceased, who was his mother. That plaintiff was his sister. That in August following his mother's death, and after he had taken out letters of administration, the plaintiff was at his house, and told him that she had never intended to charge anything for the care of her mother. That the deceased had on hand two hundred and forty dollars, in cash, and had had that much, or more, on hand for several years. And on cross-examination testified: At the time of the above conversation, the plaintiff wanted to know how much he was going to allow her for what she had done in taking care of her mother, and he told her to go to the court, if she was hog enough to charge anything for taking care of her mother in her old age; she could get what allowed she could. He denied that he had ever offered to pay thirty dollars for her services. That the deceased told him that she was so old and helpless, she would have to go to live with some of her

children, and she did not want to go to his house, because he had so many children, that the noise they would make would annoy her so she could not stand it. That there were two other children, one living in Kansas, and one somewhere in Dent county. That he and his sister were all the children living in this county.

This was all the evidence.

And the defendant asked the following instruction:

"The court instructs the jury that no express promise to pay for the services, alleged to have been rendered for her mother by the plaintiff, has been proven, and the jury are not authorized to infer such a promise unless they believe, from the evidence in the case, that it was the intention of plaintiff to charge her mother for such services at the time they were rendered, or the intention of her mother to pay for the same." Which was by the court refused.

The court of its own motion gave the following instructions:

"If the jury believe from the evidence, and all the facts and circumstances of the case, that the care and attention given the deceased by the plaintiff to Eliza Robinson was at the request and solicitation of said deceased, and that said deceased was not, prior thereto, a member of plaintiff's family, then such request or solicitations constituted an implied contract to pay for the services rendered by the plaintiff to the deceased, and the jury will find for the plaintiff in such amount as they may think the services rendered reasonably worth—not exceeding, however, the sum of thirty dollars per month, and allow interest on such amount, at the rate of six per cent. per annum, from November 11, 1887."

"If you believe from the evidence that the deceased, Eliza Robinson, expressed a desire to live with Mrs. Brock, on account of her own infirmity and disease, and that, in pursuance of such expressed desire, the plaintiff

took her to her own house and home and nursed her, and took care of her during her last disease, and that said Eliza Robinson was not, prior thereto, a member of Mrs. Brock's family, or living with her, but desired to go, and did go, to Mrs. Brock's for the purpose of being well taken care of and nursed, then you may infer an implied contract on the part of Mrs. Robinson to pay the plaintiff for the services rendered."

"If the jury believe from the evidence that the plaintiff, Mrs. Brock, requested her mother to live and stay with her, and that her mother, Eliza Robinson, in pursuance of such request, went to the house of plaintiff, and was by her nursed and taken care of voluntarily, and without any intention on the part of plaintiff ever to charge for services, then you will find the issues for the defendant."

"If you believe from the evidence that Eliza Robinson went to the house and home of her daughter, Mrs. Brock, at the request and solicitation of the latter, and remained there as a member of Mrs. Brock's family, without any intention or willingness on her part to pay for the services rendered her by Mrs. Brock, at any time, then you must find for the defendant."

There was verdict for plaintiff for $363.97.

*L. F. Parker*, for the appellant.

(1) The second instruction in the nature of a demurrer to the evidence should have been given. *Lynch v. Bogy*, 19 Mo. 170; *Morris v. Barnes*, 35 Mo. 412; *Ryan v. Lynch*, 9 Mo. App. 19; 1 Pars. Cont., p. 530, sec. 1; *Neel's Adm'r v. Neel*, 9 P. F. Smith, 347; *Miller's Appeal*, 4 Ont. 571; *Hertzog v. Hertzog*, 5 Casey, 465; *Horton's Appeal*, 13 Norton, 62; *Moyer's Appeal*, 2 Cent. Rep. 811; *Woods v. Land*, 30 Mo. App. 176. (2) The instruction asked by defendant at the close of the whole case should have been given. See authorities cited under point 1. (3) The first instruction given by

the court of its own motion is not the law, is not based upon any evidence in the case, and should not have been given.    See authorities cited under point 1; *Smith v. Meyers*, 19 Mo. 433; *Hart v. Hart, Adm'r*, 41 Mo. 445; *Guenther v. Burklecht*, 22 Mo. 430; *Cowell v. Roberts*, 79 Mo. 218.

*W. S. Pope*, for the respondent.

(1)    The court did not err in the instruction given for the plaintiff.    *Hart v. Hart, Adm'r*, 41 Mo. 445; *Smith v. Meyers*, 19 Mo. 433; *Cowell v. Roberts*, 79 Mo. 218; *Woods v. Land*, 30 Mo. App. 176, and cases therein cited.    (2) The court did not err in refusing the instruction for defendant.

ELLISON, J.—It is claimed by plaintiff that as her mother, Mrs. Robinson, was not living with her till the service began that they should be regarded as strangers, and that the rule of non-presumption of a promise to pay, which arises where the family relationship exists, should not obtain in this case.

I do not agree to this contention.    The parties were related by the closest ties of blood, and the law in such case follows the dictates of humanity, and will ascribe the attention and care which a daughter bestows upon her aged mother to the tender impulse which should arise from the relationship, and not to a desire for pecuniary reward.    The ordinary presumption which would arise between strangers does not prevail.    *Woods v. Land*, 30 Mo. App. 176.    On the other hand, the relationship rebuts such presumption (*Ib.*), and, in the absence of any express promise, the important question is the intention, which must be shown to exist upon the one side to pay, and, upon the other side, to receive pay, in order to establish an implied promise.    *Copp v. Hardy*, 32 Mo. App. 588.

Brock v. Cox, Adm'r.

It is evident, from the instructions refused for defendant, and from those given by the court, that the principles above indicated were not considered applicable to this case from the fact, no doubt, that the plaintiff, prior to the commencement of the account, was living apart, that is, that she and her mother were not, prior to this, members of one and the same family; but this, considering the nature and character of the service rendered here, can make no difference, and does not have the effect of altering the presumptions which are allowed in such cases.

It was plaintiff's duty to have shown by testimony that the intention existed, at the time the services were rendered, to pay and receive pay. This was not done, the mere fact of rendering the service is all. This, considering the helplessness of her mother, would lead us to ascribe plaintiff's motive to duty and affection rather than an expectation of compensation.

The evidence does not even show a request on the part of the mother, but does show that *plaintiff* asked her to "come, go home with me, and I will take care of you as long as you live." There is nothing from which it can be inferred that there was an implied contract, and, such being the case, it follows that the judgment should be reversed, and it is so ordered. All concur.