WINIFRED McKEON, Appellant, v. NATIONAL CASUALTY COMPANY, Respondent.*

St. Louis Court of Appeals. Opinion Filed January 3, 1925.

1. **INSURANCE: Prescribed Time for Bringing Action: Denial of Liability.** An action on an accident insurance policy, where defendant disclaimed all liability under the policy sued on was not prematurely instituted by plaintiff, because she refused to defer to bring the action on the policy until the expiration of sixty days after proof of loss filed as it provided.

2. ————: Accident Insurance: Action on Policy: Prima-facie Case. In an action on an accident insurance policy, the provisions of which insures against accident resulting solely from bodily injuries directly and independently of all other causes, by the happening of an external violent and accidental event, the plaintiff, by introduc-

McKeon v. Nat. Casualty Co.

ing in evidence the policy and testimony tending to show that insured met his death by an external, violent, bodily injury, within four months of the day of the accident, as the result of a gunshot wound entering at the base of the skull, a prima-facie case was made out, since it would then be presumed from plaintiff's evidence, that the injury was accidentally sustained.

3. **APPELLATE PRACTICE:** Appellate Court Bound by Verdict on Controverted Facts. Where the verdict of a jury was in favor of the defendant, the appellate court, as to controverted facts, are bound by that verdict.

4. ———: Defendant's Evidence: Inferences: Appellate Court Draws Most Reasonable Inferences to Sustain Verdict for Defendant. In determining whether under the evidence, the death of the insured be found to be accidental within the meaning of an accident insurance policy, the appellate court must draw, in view of a verdict for the defendant, the most reasonable inferences from defendant's evidence.

5. **INSURANCE:** Accident Insurance: Act Causing Injury: When Act is Accidental Stated. If an act causing an injury was intentionally done by the insured, the result was not accidental; on the other hand, if the injury was intentionally caused by the aggressive act of another, the result is accidental.

6. **HOMICIDE:** Police Officers: Arrest Without Warrant: Killing by Officer: When Justifiable. Officers may only arrest felons and those probably suspected of felonies, and kill felons or those justly suspected thereof, who flee or resist. The words "probably suspected," and "justly suspected," must be taken as tantamount to reasonable grounds, and reasonable grounds to believe that accused had committed a felony is dependent on the actual or historical knowledge of the arresting official that the accused has committed a crime.

7. **INSURANCE:** Accident Insurance: Policy Provisions: Insured Shot and Killed by Officers While Fleeing: Accidental Within Terms of Policy. The death of the insured who was shot and killed while fleeing from police officers, *held* · accidental within the meaning of an accident insurance policy insuring against death from injuries by external, violent and accidental event, where police officers attempting to arrest insured had no warrant for the arrest and no probable cause to believe that insured had committed an offense, and had no specific charge to make against him, but merely wanted to apprehend him for purpose of identification.

8. ———: ———: ———: ———: Accidental Though Insured Fired at Pursuing Officers. The death of insured who was shot and killed by

police officers while fleeing from them *held* accidental within the meaning of an accident insurance policy insuring against death resulting from injuries by external, violent and accidental event, even though insured fired at the pursuing officers, where they were pursuing him and were attempting to arrest him without probable cause, and were the aggressors from the beginning and continued so to the end.

9. **ARRESTS: Arrest Without Warrant: Bad Reputation Alone Does Not Justify.** The mere fact that one possesses a bad reputation does not justify police officers in arresting him without warrant; although it may be considered with other information in determining whether the officer had probable cause to believe him guilty of the offense for which arrested.

10. **INSURANCE: Accident Insurance: Death of Insured: Killed by Officers While Fleeing: Accidental Though Insured Possessed Bad Reputation.** The death of insured, shot and killed while fleeing from police officers, *held* accidental within the meaning of an accident insurance policy insuring against death resulting from injuries by external, violent and accidental event, where the officers were attempting to arrest insured without probable cause, even though he possessed a bad reputation, such fact not constituting grounds for arrest.

11. **INSTRUCTIONS: Accident Insurance: Instruction Assuming Insured Tried to Escape Arrest and Knew Persons Pursuing were Police Officers: Erroneous.** In an action on an accident insurance policy, to recover for the death of insured, killed while fleeing from police officers, an instruction by use of the words "while trying to escape arrest by police officers," *held* erroneous, as assuming that insured tried to escape arrest, and that he knew that the persons pursuing him were police officers.

12. ———: ———: **Instruction Denying Recovery if Insured Entered into Pistol Duel With Police Officers While Trying to Escape Arrest and was Killed: Erroneous.** In an action on an accident insurance policy to recover for the death of insured who was shot and killed while fleeing from police officers, an instruction denying a recovery if insured, while trying to escape arrest, entered into a pistol-duel with the police officers and thereby exposed himself to unnecessary danger and while thus exposed was shot and killed by one of the officers, *held* erroneous, where there was no showing of a prearrangement, and the evidence failed to show that insured was subjected to a lawful arrest.

13. **EVIDENCE: Accident Insurance: Action on Policy: Arrest Without Probable Cause: Admission of Evidence of Insured's Bad Reputa-**

tion: Erroneous Where Reputation was Not in Issue. In an action on an accident insurance policy to recover for the death of insured, shot and killed while fleeing from police officers, the admission of evidence that insured's reputation was bad *held* erroneous, where the police officers were without probable cause to arrest him, and hence his reputation was not in issue.

14. ———: ———: ———: ———: Admission in Evidence of Divorce Petition Showing Insured's Bad Reputation: Erroneous Where Insured's Reputation was not in Issue. In an action on an accident insurance policy to recover for the death of insured killed while fleeing from police officers, the admission in evidence of a divorce petition filed by the beneficiary against the insured showing his bad reputation *held* erroneous, where there was no evidence that the police officers ever knew or had heard of the facts alleged therein, and insured's reputation was not in issue.

*Headnote 1. Insurance, 33 C. J., section 782; 2. Accident Insurance, 1 C. J., section 278; 3. Appeal and Error, 4 C. J., section 2836; 4. Appeal and Error, 4 C. J., section 2719; 5. Accident Insurance, 1 C. J., sections 72, 77; 6. Homicide, 30 C. J., section 195; 7. Accident Insurance, 1 C. J., section 77; 8. Accident Insurance, 1 C. J., section 77; 9. Arrest, 5 C. J., section; 46; 10. Accident Insurance, 1 C. J., section 77; 11. Trial, 38 Cyc., p. 1659; 12. Trial, 38 Cyc., p. 1618; 13. Trial, 38 Cyc., p. 1617; 14. Accident Insurance, 1 C. J., section 294 (1926 Anno).

Appeal from the Circuit Court of the City of St. Louis.— *Hon. William H. Killoren,* Judge.

REVERSED AND REMANDED.

*Bass & Bass, John Grossman* and *James J. O'Donohoe* for appellant.

(1) Plaintiff made out a prima-facie case by introducing the policy and proving that insured's death resulted from external, violent injuries, and cast the burden on defendant of pleading and proving an affirmative defense. Lafferty's Adm'r v. Kansas City Cas. Co., 209 S. W. 942, affirmed 229 S. W. 750. That the injuries were sustained accidentally will be presumed. Merkel v. Railway Mail Ass'n, 205 Mo. App. 484 (same case, second appeal, 254 S. W. 368, writ of *certiorari* denied); Wheel-

er v. Fidelity & Cas. Co., 251 S. W. (Mo. en banc) 924; Kahn v. Metropolitan Cas. Co., 240 S. W. (Mo. en banc) 793; O'Connor v. Columbian Nat. Life Ins. Co., 208 Mo. App. 47; Goodes v. Order of U. C. T., 174 Mo. App. 330; Hooper v. Standard L. & Acc. Ins. Co., 166 Mo. App. 209; Riska v. Railroad, 180 Mo. 168; Meadows v. Life Ins. Co., 129 Mo. 76; Cronkhite v. Travelers Ins. Co., 75 Wis. 116; Jenkins v. Pacific Mutual, 131 Cal. 121; Burnham v. Interstate Casualty Co., 117 Mich. 142; Van Eman v. Fidelity & Casualty Co., 201 Pa. 537; Caldwell v. Iowa, S. T. M. A., 156 Iowa, 327; Peck v. Association, 5 N. Y. Supp. 215; Travelers Ins. Co. v. Hunter, 30 Tex. C. C. A. 489; Preferred Acc. Ins. Co. v. Fielding, Admr., 35 Colo. 19. Death by encounter or murder is death by an accidental event. Eicks v. Fidelity & Cas. Co., 253 S. W. (Mo. en banc) 1029; Berryman v. Southern Surety Co., 285 Mo. 379; Lovelace v. Travelers P. Ass'n, 126 Mo. 104; Collins v. Fidelity & Cas. Co., 63 Mo. App. 253; Phelan v. Travelers Ins. Co., 38 Mo. App. 640; Harper's Admr. v. Ins. Co., 19 Mo. 506; Overton v. Ins. Co., 39 Mo. 122; Travelers P. Ass'n v. Fawcett, 104 N. E. 991; Kascautas v. Federal Life, 185 N. W. 125; Supreme Council v. Garrigus, 104 Ind. 133; Richards v. Travelers Ins. Co., 89 Cal. 170; Campbell v. Fidelity & Cas. Co:, 109 Ky. 661, 170; Travelers Ins. Co. v. McConkey, 127 U. S. 661; Ripley v. Railway Pass Assur. Co., Fed. Case No. 11,854, affirmed 16 Wal. 336; Robinson v. U. S. Mut. Acc. Assn., 68 Fed. 825; Travelers' Ins. Co. v. Dupree (Ala. Ct. App.), 82 So. 579; 1 Cyc. 290; 1 C. J. 431 and 497; 14 R. C. L. 1437. (2) Excepted risk is not available unless pleaded and proven. Harrison v. Business Men's Ass'n, 133 Ark. 163; Bankers Health & Acc. Ass'n v. Wilkers, 209 S. W. 230; Vernon v. Traveling Men's Ass'n, 158 Iowa, 597; Ward v. Interstate B. M. Acc. Ass'n, 185 Iowa, 674; Red Men's F. Ass'n v. Rippey, 181 Ind. 454. No risk is excepted by the policy and the court should have given plaintiff's peremptory instruction or sustained her motion for judgment *non obstante veredicto.* Dezell v. Fidelity & Cas. Co., 176 Mo. 253; Sears v. Ins. Co., 108 Kans. 516; Pre-

ferred Accident Ins. Co. v. Fielding, 35 Colo. 19; Railway
Mail Ass'n v. Moseley, 211 Fed. 1 (cases cited); Richards
v. Standard Accident, 58 Utah, 622; Union Accident v.
Willis, 44 Okla. 578; Nat. Life & Acc. Ins. Co. v. Hodges,
244 S. W. 863; American Mut. Benefit Ass'n v. Joshua,
200 S. W. 260; Starr v. Aetna Life, 41 Wash. 199; Allen
v. Travelers Assn., 163 Iowa, 217, 222; Hutchcraft's Ex'r.
v. Travelers Ins. Co., 87 Ky. 300; Utter v. Travelers Ins.
Co., 65 Mich. 545. Motion for judgment *non obstante
veredicto* is available to plaintiff under Missouri prac-
tice. King v. Grocer Co., 188 Mo. App. 235. And where,
as here, there is no tenable defense, the reviewing court
reverses and remands with directions. Dezell v. Fidelity
& Cas. Co., 176 Mo. 253; Renfro v. Ins. Co., 148 Mo. App.
430; Seeburger v. Ins. Co., 253 S. W. 485; Shearlock v.
Ins. Co., 193 Mo. App. 430. (3) Defendant's modified in-
struction No. 2 is erroneous, for reasons, amongst which
are: (a) The policy does not except death from "a re-
volver or pistol duel." (b) There is no evidence that in-
sured "entered into a revolver duel" with the officers.
The word "duel" has a well-defined meaning. Davis v.
Modern Woodmen, 98 Mo. App. 713; Baker v. Supreme
Lodge, 103 Miss. 374; Ward v. Commonwealth, 132 Ky.
636; State v. Fritz, 133 N. C. 725; Kennedy v. Aetna Life,
242 Ill. 396. (c) Exposure to unnecessary danger is not
made an excepted risk by the policy. (d) Neither is
same pleaded. And instructions cannot enlarge on the
policy and pleadings. (e) Insured did not expose him-
self to unnecessary danger. Bateman v. Ins. Co., 110 Mo.
App. 443; 2 Bacon, Sections 525, 526, and cases cited. (f)
The word "duel" is not defined. (g) The meaning of
the phrase "exposed himself to unnecessary danger" is
not given. (4) Defendant's evidence to the effect that
the insured's reputation was that of a bank robber, bur-
glar, highwayman, dangerous gangster and thief, as well
as the divorce petition, were incompetent, highly preju-
dicial and calculated alone to inflame the passions of the
jury. Knights of M. of W. v. Shields, 156 Ky. 270; Sikes
v. Keller, 197 S. W. 311, 313; U. S. Annuity & Life Ins.

Co. v. Peak, 122 Ark. 58 (cases cited); Great Western Life Ins. Co. v. Sparks, 38 Okla. 395, 49 L. R. A. (N. S.) 724, and note. (5) The stipulation that "No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the policy," is void and of no binding effect, and suit was not prematurely instituted for the following reasons: (a) Because said stipulation conflicts with section 2166, R. S. 1919. Karnes v. Ins. Co., 144 Mo. 413; Richardson v. Railroad, 149 Mo. 311; Roberts v. Modern Woodmen, 133 Mo. App. 207; Cobble v. Royal Neighbors, 291 Mo. 125; Kanz v. Royal Neighbors, 13 Mo. App. 341. (b) Because defendant disclaimed all liability under the policy and action could be brought at once, without waiting for expiration of the sixty days. Baker & Lasley v. Phoenix Ins. Co., 221 S. W. 761; Hosmer Bros. v. Ins. Co., 80 Mo. App. 419; Phillips v. Ins. Co., 14 Mo. 220; Young v. Ins. Co., 269 Mo. 1; Martin v. Ins. Co., 256 S. W. 120; 4 Cooley, pp. 3959-3961 (cases cited); 7 Cooley, 3959 (b), pp. 1668-1669 (cases cited).

*Leahy, Saunders & Walther* for respondent.

(1) The death of the assured was not an accident within the meaning of the policy. Berryman v. Southern Surety Co., 285 Mo. 379, 394; Taliaferro v. Travelers Protective Association of America, 80 Fed. 368, 370. Phelan v. Travelers Insurance Co., 38 Mo. App. 640, 645; Collins v. Fidelity & Casualty Co., 63 Mo. App. 253; Martin v. Peoples Mutual Life Ins. Co., 235 S. W. 389; Meister v. General Accident, Fire & Life Assurance Corp., 179 Pac. 913, 4 A. L. R. 723; Prudential Casualty Co. v. Curry (1914), 10 Ala. App. 642; Metropolitan Casualty Co. v. Chambers (1918, Ark.), 206 S. W. 64; Price v. Occidental Life Ins. Co. (1915), 169 Calif. 800. (2) (a) It

216 M. A.—33

was competent to show that the assured's reputation was that of a bank robber, burglar, highwayman, dangerous gangster and thief, in connection with other evidence showing the lawful purpose of pursuit by the officers. (b)   The petition in the divorce case was competent as an admission of plaintiff against interest.   Kirkpatrick v. Metropolitan Street Ry. Co., 211 Mo. 68; Dowzelot v. Rawlings, 58 Mo. 75.

DAVIS, C.—This is an action on an accident insurance policy issued by defendant on the life of Thomas F. McKeon, with his wife, the plaintiff, named beneficiary therein.   The jury returned a verdict for defendant, and plaintiff, after the court below overruled her motions for a new trial and for judgment *non obstante verdicto,* appealed from the judgment entered thereon.

Plaintiff's evidence tends to show that defendant on  or about March 1, 1919, issued to plaintiff's husband its policy C303988, in which she was named beneficiary, the pertinent parts of which are as follows:

"In consideration of the payment of a policy fee of $3, and of the premium $6.15, and of the statements and agreements in the application herefor, a copy of which is endorsed hereon or attached hereto.

"Does Hereby Insure Thomas F. McKeon, of St. Louis, Mo., the person described in said application, who states his occupation to be that of not working, I have an income; duties, collecting income, subject to the provisions and conditions herein contained and endorsed hereon, from 12 o'clock noon, Standard Time, of the day this contract is dated, until 12 o'clock noon, Standard Time, of the first day of March, 1920, and for such further time as may be stated in the renewal receipts.

"Paragraph A.   Accident Indemnity for Total Disability.   At the rate of Sixty Dollars per month, against total loss of time, not exceeding thirty-six consecutive months, resulting solely from bodily injuries effected directly and independently of all other causes, by the happening of an External Violent and Accidental event,

and which immediately, continuously and wholly, from date of accident, disable and prevent the insured from performing any and every duty pertaining to his business or occupation.

"Paragraph B. Partial Disability. Or, if injuries caused and occurring as stated in Paragraph (A), shall immediately, wholly and continuously, from date of accident, disable and prevent the insured from performing one or more important daily duties pertaining to his occupation, or in event of like disability immediately following total disability, or in event of total disability not immediately following injury, but occurring within thirty days from date of injury, the Company will pay the insured for the period of such disability, not exceeding six (6) consecutive months, one-half of the rate above specified for total loss of time; provided, the combined period for which indemnity shall be payable for total and partial disability under Paragraphs (A) and (B) hereof shall not exceed thirty-six consecutive months.

"Paragraph C. Specific Total Losses. In event of any one of the following specific total losses, within four months from date of accident, which shall result from bodily injuries caused and occurring as stated in Paragraph (A), the Company will pay the amount herein specified for such loss, in lieu of any other indemnity.

"For loss of life (payable to beneficiary), One Thousand Dollars, the Principal Sum.

"Paragraph F. Fifty Per Cent Accumulation. For each period of three consecutive months immediately preceding the date of the accident, that this policy shall have been maintained in continuous force by the payment of the premiums on or before the dates due, five per cent shall be added to the original specific amount payable for any loss under Paragraph (C) sustained by the insured, but such addition shall never exceed fifty per cent of such original amount.

"Standard Provisions.

"Paragraph S.  1.  This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation.

"14.  No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the policy."

That the policy was renewed by  the payment of premiums, and was in force and effect until March 20, 1922; that for loss of life, payable to the beneficiary, the principal sum stated therein was $1000, and defendant admitted that, in addition to the $1000 principal sum, the policy had an accumulation of $350 under Paragraph F; that Thomas F. McKeon, the insured, died on January 6, 1922, from a gunshot wound entering at the base of the skull; that plaintiff offered and read in evidence a letter from the Claims Adjuster of defendant, which letter stated, in substance, that said McKeon met his death by a gunshot wound inflicted by a policeman while endeavoring to apprehend him as an alleged member of a gun gang; that the act is the result produced exactly with the intentions of the actor, the result is not an accident, and could by no means be construed as accidental; that the lack of liability is evident, and that there was no ne-

cessity of submitting further proofs for execution to permit of proving the claim, and that they regretted that they cannot give this case further consideration.

Defendant's evidence tended to show that on January 6, 1922, four officers in a police automobile, while going west, met McKeon in an Essex car going east on Locust street. A narrative by one of the officers epitomizes the facts on which defendant relies. It is as follows: "We were going up Locust street and Detective Fierce was driving us, four of us, in the car, and just about at the intersection of Twenty-first and Locust Fierce remarked, 'There is Doyle.' The traffic was rather heavy at that time and Fierce kind of swerved the car, and Doyle thought—evidently thought we were going to turn and he went east to Twentieth and over Twentieth. Fierce drove over Twenty-first to St. Charles and at that point we nearly collided with Doyle's car and ordered him to stop. Instead of stopping he increased his speed. He was going very fast; he had a fast car. We swerved to the west to Twenty-second street and he went north on Twenty-second street and we followed, and at Twenty-second and Washington a street car nearly cut us off. Well, we chased him as far as Franklin avenue and fired a shot in the air, might have fired two, I don't know. He increased his speed and we were running very fast.

"And going over Twenty-second street, before arriving at Biddle, there was a couple reports from his car and we realized that he was shooting at us and we returned the fire. He turned west on Biddle street and we lost sight of him from Twenty-second street until Jefferson avenue, when we turned into Biddle street he was just about turning Jefferson avenue north. When we got to Jefferson avenue he was quite a distince ahead of us going north, and he turned west on Cass. When we got into Cass avenue we exchanged shots, several of us firing at him, all of us. He was in the car track and we were in the car track. When his car got to Garrison avenue, or before it got—approaching Garrison avenue, about a block, I should say, east of Garrison avenue, his

car commenced to slack up and we stopped shooting. When it got to Garrison avenue the car stopped dead and we were going so fast that we went by it about seventy-five feet, probably, and I jumped out of the car and I said, 'Look out, boys, he may be foxing,' and we had our pistols in our hands and we covered the car, and when we got to the car he was drooped over the steering wheel and there was blood coming from his mouth. Fierce walked over to the car and took a 45 caliber revolver out of his hand. We searched the car and we found several shotgun shells in the back, what they call the tonneau of the car, in front of the back seat on the side.'' The four officers testified, each separately, that he did not deliberately shoot or kill McKeon, and two, at least, said they bore him no malice.

Such other facts as are pertinent will later appear in a discussion of the questions involved.

I.   Inasmuch as defendant disclaimed, in the letter to plaintiff's attorney, all liability under the policy sued on, the cause was not prematurely instituted by plaintiff because she refused to defer to bring the action on the policy until the expiration of sixty days after proof of loss filed as it provided. [Baker & Lasley v. Phoenix Ins. Co., 221 S. W. 761; Martin v. Ins. Co., 256 S. W. 120; Hosmer Bros. v. Ins. Co., 80 Mo. App. 419.]

II.   It will be noted that the policy insures against accident, resulting solely from bodily injuries effected directly and independently of all other causes, by the happening of an external violent and accidental event. It follows that by introducing in evidence the policy and testimony tending to show that insured met his death as the result of an external violent bodily injury, within four months of the day of the accident, that is, as the result of a gunshot wound entering at the base of the skull, plaintiff made a prima-facie case. It will then be presumed, from plaintiff's evidence, that the injury was accidentally sustained. [Merkel v. Railway Mail Ass'n., 205 Mo. App. 484, 226 S. W. 229; same case, second ap-

peal, 254 S. W. 368; Wheeler v. F. & C. Co., 298 Mo. 619, 251 S. W. 924; O'Connor v. Ins. Co., 208 Mo. App. 46, 232 S. W. 218.]

The verdict of the jury was in favor of defendant. Therefore, as to controverted facts, we are bound by that verdict. It is defendant's contention that the death of insured was not accidental within the meaning of the policy, because the insured culpably provoked or induced the act causing his death, brought about by an assault committed by him, with the result that his death was the natural result or probable consequence of his act. Authorities cited in support of the contention are: Berryman v. Surety Co., 285 Mo. 379, 227 S. W. 96; Taliaferro v. Trav. Ins. Co., 80 Fed. 368; Phelan v. Trav. Ins. Co., 38 Mo. App. 640; Collins v. F. & G. Co., 63 Mo. App. 253; Meister v. Gen. Acc. Co., 179 Pac. 913, 4 A. L. R. 723; Prudential Cas. Co. v. Curry, 65 So. 852; Met Cas. Co. v. Chambers, 206 S. W. 64; Price v. Occidental Ins. Co., 169 Cal. 800.

III. We think it well to here state the pertinent issues formulated by the pleadings. The petition states, in substance, that defendant, by its written policy, insured the life of Thomas F. McKeon, promising to pay his wife, the beneficiary stated therein, in the event of his death, the principal sum, resulting solely from bodily injuries effected directly and independently of all other causes, by the happening of an external, violent and accidental event, within four months from the date of the accident; that while said policy was in force, insured died within four months, on January 6, 1922, from injuries effected by an accidental gunshot wound; that before and since his death, all terms and conditions of the policy have been met. Defendant's answer, after admitting that the policy was issued, was renewed for a term ending March 1, 1922, and that plaintiff was the beneficiary therein, was a general denial. Defendant further answered that Thomas F. McKeon did not meet his death by the happening of an external violent and accidental

event, within the meaning of the policy, but that he met his death while engaged in a revolver duel with officers of the law in an attempt to escape lawful arrest. The reply was a general denial.

IV. Can the death of the insured, under the evidence, within the meaning of the policy, be found to be accidental? In determining that question, we must draw, in view of the verdict, the most reasonable inferences from defendant's evidence, and we deem it expedient to set forth facts. Supplementing our statement of facts, we think defendant's evidence tends to establish that four police officers in citizens clothes were on January 6, 1922, driving west in an automobile on Locust street, in the city of St. Louis, and that McKeon was traveling east on the same street; that shortly after the police automobile had passed Twentieth street the police officers, recognized McKeon. The police officers then went west to Twenty-first street, turning north to St. Charles street, where and when the police automobile nearly collided with the automobile driven by McKeon (who seemingly had driven north on Twentieth and west on St. Charles street) traveling west on St. Charles street. When the automobiles at this point were five or six feet apart, the police officers holloed very loudly and ordered the insured to stop. The police officers testified that insured recognized them, and that he knew officer Fierce, driver of the police machine, from the hold-over, on the streets, in courts, and in the Municipal Courts building; that insured refused to stop when commanded, and fled northwardly to about Cass and Garrison avenues, the scene of his death. The officers stated that insured fled northwardly from Twenty-first and St. Charles street, the police machine pursuing, and that when the police machine reached Franklin avenue one of the officers fired a shot or two in the air, and that immediately after shots were fired from the insured's automobile toward the police machine. The history of the episode related by the officers tends to show the inter-

mittent firing of shots by the police officers at insured and by insured, or some one in his automobile, at the officers. Officer Fierce testified that insured fired point-blank at him, and that every time a left turn was made the insured would fire point-blank at the police car. The evidence tends to show that insured was trying to get away, and that the officers were within 200 to 250 feet of him when they fired the last shot; that insured's automobile came to a stop near Garrison and Cass avenues; that the officers after alighting, found a 45 caliber pistol in insured's hand, with three exploded and three unexploded sheels, the pistol being still warm, and, in the opinion of the officers, recently discharged; that insured, bleeding from the mouth and nose, was dead, and was later taken to the Morgue; that two bullet holes were found in the back curtain of insured's automobile; that the officers had instructions to bring in the gangsters suspected of robberies for the purpose of identification, and the insured was suspected of many robberies. The following question and answer shows the purpose of apprehending him: "Q. And you had no specific charge against this man? A. Only we wanted to put him up for identification for other robberies that had been committed." A witness stated in substance that they had no specific charge against insured, but it was their duty to bring up for identification gangsters suspected of robberies, and insured was suspected of numerous robberies.

We think defendant's evidence further tends to show that the police officers first fired in the air, and that immediately afterwards shots came from insured's automobile, fired directly at the police machine, and that there was desultory firing then by the occupants of both automobiles; that the police in the machine were called the Night and Day Riders squad, and were looking for thieves; that insured was suspected of numerous robberies, was head of the Hogan gang, and was a dangerous man; that the squad had before chased him and tried to apprehend him, but he had previously gotten away from them several times; that the police had lots of evidence

they cannot divulge, nor can they give away the secrets of the department; that they wanted insured for identification regarding bank robberies; that the officers arrested all known thieves that they consider dangerous even on sight at all times, for they are enemies to society; that they only wanted to put insured up for identification for other robberies that had been committed.

Considering the above evidence (we think we have stated the pertinent and essential facts fully), from any angle that we may, we are led to the definite conclusion that the police officers, in attempting the arrest, had no specific charge to make against the insured, but merely desired to apprehend and incarcerate him for the purpose of identification, if possible, as a participant in a felony. There is no evidence in the record that the officers had actual or historical knowledge of a felony committed by insured, other than the Jefferson City bank robbery, respecting which he was on bail.

V.   The weight of authority supports the rule that if insured culpably provoked or induced the act that caused injury or death, then the result was not accidental, for the result was the natural and probable consequence of his act, that of an aggressor. [See authorities cited in paragraph 2.] Conversely, if the other party to the occurrence is the aggressor, even though deliberately intending the act that caused injury or death, the result is accidental as to the insured. That is to say, if the act causing the injury was intentionally done by the insured, the result was not accidental; on the other hand, if the injury was intentionally caused by the aggressive act of another, the result was accidental.

Plaintiff contends, however, that death by encounter is an accidental event, citing in support thereof Eicks v. F. &. C. Co., 253 S. W. 1029; Berryman v. Surety Co., 285 Mo. 379, 227 S. W. 96; Lovelace v. Ass'n., 126 Mo. 104, 28 S. W. 877; Collins v. F. & C. Co., 63 Mo. App. 253; Phelan v. Ins. Co., 38 Mo. App. 40; Harpers' Admr. v. Ins. Co., 19 Mo. 506; Overton v. Ins. Co., 39 Mo. 122; Kascautas v. Federal Life, 185 N. W. 125; Supreme

Council v. Garrigus, 104 Ind. 133; Richards v. Ins. Co., 89 Cal. 170. Plaintiff's contention is not limited, but includes within an accidental event and injury to the insured irrespective of the party provoking or inducing the act that caused the injury. We do not consider the contention consonant with the rule carrying the weight of authority which we prefer, nor do we think the Missouri cases go so far as to deny that rule.

VI. The record is wanting evidence tending to show that, at Twenty-first and St. Charles streets, where and when the order to stop was holloed, the police officers possessed a warrant for the arrest of insured, or that they saw him committing a crime. As the scene of the attempted arrest lay in the city of St. Louis the authority to arrest insured then depended on the condition that the police officers had reasonable grounds to believe that insured had committed either a felony or misdemeanor. [Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68.]

The police were public officials. In 2 R. C. L., 446-7, it is said:

"Where public officials are expressly authorized by statute or municipal ordinance to conserve the peace, they have, in making arrests, all the common-law authority of constables and watchmen, and may arrest any person who they, on reasonable ground, believe has committed a felony."

The right of officers to apprehend fleeing felons is discussed in State v. Evans, 161 Mo. 95, 61 S. W. 590, 84 Am. St. Rep. 669, where it is said:

"And hence it is, that these officers, that are thus intrusted may without any other warrant but from themselves arrest felons, and those that are probably suspected of felonies; . . . and, on the other side, if persons that are pursued by these officers for felony or the just suspicion thereof, . . . shall not yield themselves to these officers, but shall either resist or fly before they are apprehended, . . . it is no felony in these

officers or their assistants, that upon inevitable necessity kill them," etc.

It is evident from the above quotation that officers may only arrest felons and those probably suspected of felonies, and kill felons or those justly suspected thereof who flee or resist. The words "probably suspected," and "justly suspected," as used in State v. Evans, supra, must be taken as tantamount to reasonable grounds; and reasonable grounds to believe that accused had committed a felony is dependent on the actual or historical knowledge of the arresting official that the accused has committed a crime. This is supported by 2 R. C. L., 472, where it is said:

"The law which gives an officer the right to kill an escaping felon limits the right to cases in which the officer actually knows that the person whom he is seeking to arrest is a felon and not an innocent person." [Johnson v. Williams' Adm'r., 111 Ky. 289, 63 S. W. 759, 98 Am. St. Rep. 416, 54 L. R. A. 220. See also 67 L. R. A. 310, Note.]

Reasonable grounds, as used above, is substantially tantamount to probable cause in actions for malicious prosecution. [5 C. J. 517, par. 46; State v. Evans, 161 Mo. 95, 61 S. W. 590, 84 Am. St. Rep. 669; State v. Grant, 79 Mo. 113, 49 Am. St. Rep. 218.] Commendable as are the acts of police officers in ferreting out crime and arresting criminals, yet they may not in their zeal override the law of the land. Such officer, it is said in Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 3 A. L. R. 642, 1. c. 645, "is conclusively presumed to know his duty, and to refrain from acting outside of such duty." Circumscribed by a limited authority to arrest, the arresting officer must have either actual or historical credible knowledge that the party whose arrest is sought has committed a crime and, respecting that crime, is at large without bail. It is said in State v. Grant, 79 Mo. 113, 1. c. 134, 49 Am. St. Rep. 218, "Mere belief on the part of Jones that the defendant had been guilty of an offense, or was then engaged in the commission of one, if such be-

lief had no basis of fact or circumstance on which to rest, would not authorize him to attempt an arrest.''

VII. Probable cause is based on facts. If the facts are uncontroverted it is within the province of the court to determine the presence of probable cause; if, however, the facts show controversy, involving probable cause on the one hand and denying it on the other, the question of probable cause is for the jury. With the verdict of the jury for the defendant, the question before us relates to the adequacy of the facts to show probable cause.

- Searching the record as we may, we are unable to find probable cause on the part of the police officers to arrest insured when, at Twenty-first and St. Charles streets, they ordered him to stop. They failed to divulge any actual or related knowledge connecting insured with a specific crime, excepting the Jefferson City bank robbery, regarding which he was on bail. Time and again they stated that he was wanted for identification, and they had no specific charge against him. It is true one officer stated that he was wanted for three or four different jobs, bank robberies, the Wellston bank, the Grand avenue bank, but he refused to disclose any knowledge or information that he might have had, and finally stated that insured was wanted for identification. The evidence went no further than tending to show that insured was wanted for identification. So far as the record tends to show their suspicions were not based on fact, and therefore did not import probable cause. This is not sufficient. [State v. Jordan (Mo. Sup. En banc), not yet reported.]

VIII. It is the further contention of defendant that the firing at the pursuing police officers by the insured constituted a crime committed in the presence of the officers that entitled them to apprehend, and to kill the insured if necessary to prevent his escape. This contention overlooks the statement of the officers that they first fired into the air, and that, up to this point, the action

of the officers in pursuing insured for the purpose of arresting him was without probable cause. It is certain from the evidence that, to the time the officers fired into the air, insured had done nothing further than flee and attempt to escape.

We are not unmindful of the trying   position of police officers and the perils to which they submit; but they are officers of the law, charged with its enforcement, and are conclusively presumed to know  their  duties. They are charged with knowledge of what constitutes probable cause and that they may only arrest or attempt to arrest, without warrant, upon probable cause.  Here we have the situation of police officers pursuing insured without probable cause, firing into the air, according to their statement, and probably causing him  to believe they were shooting at him.  It is evident that the police officers, in attempting the arrest without probable cause, that is, without knowledge or information of a crime committed by insured, were aggressors from the beginning, and continued so to the end, which tended to show an accidental result within the meaning of the policy. Personal liberty is one of the absolute and fundamental guaranteed rights, and may not unlawfully be interfered with.   [Com. v. Crotty, 10 Allen, 403, 87 Am. Dec. 699; Creighton v. Com., 84 Ky. 103, 4 A. S. R. 193; Miers v. State, 34 Tex. Crim. 169, 29 S. W. 1074, 53 Am. St. Rep. 705.]  However, if insured knew those in pursuit were police officers, he must have reasonably believed that firing at them was necessary to preserve himself from death or great bodily harm.  But we may assume that he so believed if he believed that the officers were firing at him.

IX.  The officers stated that insured was suspected of many robberies, and they had instructions to bring in gangsters suspected of robberies for the purpose of identification.  If the officers meant that they were instructed to bring in gangsters whom they had reasonable grounds or probable cause to suspect of robberies, they were within their rights; but if they meant they were in-

structed by a superior officer to arrest certain persons, without reasonable grounds or probable cause to suspect them of robberies, merely for the purpose of determining whether they could be identified, then they acted without their rights, and the order of a superior officer cannot be invoked to protect them. In this conclusion we are supported by Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 3 A. L. R. 642, and Leger v. Warren, 62 Ohio St. 500, 57 N. E. 506, 51 L. R. A. 193, 78 Am. St. Rep. 738.

X. May police officers arrest one because he possesses a bad reputation?

In State v. Grant, 76 Mo. 236, l. c. 246, quoting from 2 Jacobs L. Dict., p. 41, SHERWOOD, J., says:

"And the basis of probable grounds are very many, e. g. common fame, hue and cry levied, goods found on person."

The only authority found that may tend to support the above quotation is Walgrave v. Skinner, Owens Rep. (Eng.) 121 (Fol.), where it is said:

"The plaintiff declared that he was robbed of 20 L. and that he pursued the felon with hue and cry to such a town, where he discovered the felon to the defendant, who was constable of the said town." The Court said: "Common fame is enough to apprehend any man."

What then is meant by the words "common fame"? May they be construed to mean that one may be arrested by officers merely because his reputation is bad? We think not. We agree with Macauley that common fame, however strong and general, should not be received as legal proof of guilt. While the question is not free from difficulty, we are of the opinion that common fame must connect the one to be arrested with a specific crime, otherwise one bearing an unsavory reputation would be subject to lawful arrest, no matter how unjustifiable his arrest or how righteous his acts in life. We do not wish to be understood as saying, however, that a bad reputation may not be considered by the po-

lice officers in determining whether the related information is credible. In determining whether the evidence tending to show probable cause, if any, is credible, a lesser weight of evidence may determine the credibility of the informant and the information where the reputation of the accused is bad than where it is good.

XI. Plaintiff assigns error in giving the jury defendant's instruction, as follows:

"If you find and believe from the evidence that Thomas F. McKeon was, on the 6th day of January, 1922, while trying to escape arrest by police officers, entered into a revolver or pistol duel with them and thereby exposed himself to unnecessary danger, and while thus exposed to unnecessary danger, should you so find, the said Thomas F. McKeon was shot and killed by one of said officers, your verdict must be for defendant."

While defendant offered evidence tending to show that insured knew the men ordering him to stop were police officers, nevertheless the import of the evidence is at most an inference, for the officers were in plain clothes. We think the instruction, by the use of the words, "while trying to escape arrest by police officers," assumes first, that insured tried to escape arrest, and second, that he knew they were police officers.

The word "duel" has a well defined meaning. It has been legally defined as a combat with deadly weapons between two persons by some prearrangement and understanding and, perhaps, with some formality. [Davis v. Modern Woodmen, 98 Mo. App. 713, 73 S. W. 973; Baker v. Supreme Lodge, 103 Miss. 374; Ward v. Co., 132 Ky. 636; State v. Fritz, 133 N. C. 725.] The record fails to show a prearrangement. The instruction is further erroneous because the evidence fails to demonstrate that insured was subjected to a lawful arrest. Quaere, whether the instruction assumes that insured exposed himself to unnecessary danger.

XII. The officers were permitted to testify that the reputation of insured was that of a bank robber, burglar, highwayman, safe burglar and general all-round thief, and that he was considered one of the most dangerous gangsters in the State of Missouri. Plaintiff assigns error on the part of the trial court in admitting such testimony.

Defendant contends that reputation was competent, in connection with other evidence, to show lawful pursuit by the police officers. As we have before said, the record is wanting evidence tending to show probable cause, on behalf of the officers, at the beginning of the pursuit, warranting the apprehension of insured by them, for, in the last analysis, they had no specific charge against him, but desired his incarceration to identify him only. Wanting probable cause to arrest him, his reputation, as affecting the credibility of information, was not germane. On the record before us, the court erred in admitting the testimony, for his reputation was not in issue. [Knights of Maccabees v. Shields, 156 Ky. 270; Sikes v. Kellar, 197 S. W. (Tex.) 311; United States, etc. Ins. Co. v. Peak, 122 Ark. 58; Great, etc. Ins. Co. v. Sparks, 38 Okla. 395, 49 L. R. A. (N. S.) 724 and Note.]

XIII. Plaintiff further assigns error relative to the admission of a petition for divorce, filed by plaintiff versus insured in the city of St. Louis circuit court, in which, in substance it was alleged that insured was convicted of a felony in South Dakota; that later in South Dakota, under an alias, he was convicted of grand larceny; that he was then confined in jail at Van Buren, Missouri, charged with possession of burglar tools.

For reasons stated in the preceding paragraph, the divorce petition was improperly admitted in evidence. In addition, there was no evidence that the police officers knew or had ever heard of the facts alleged.

XIV. The trial court refused to give the jury an offered peremptory instruction to find for plaintiff, and

216 M. A.—34

later overruled a motion for judgment *non obstante vere-dicto*. Plaintiff assigns error to that effect, asserting that the record shows no tenable defense, and requests this court to reverse the judgment and remand the cause, with directions to the trial court to enter judgment in her behalf.

We need not determine plaintiff's contention, for a second trial may show a different state of facts, and we think the jury should be permitted to make a finding.

The Commissioner recommends that the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of DAVIS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Daues, P. J.*, and *Nipper, J.*, concur; *Becker, J.*, in result.