Lillian B. BROWN (Plaintiff), Respondent,

v.

METROPOLITAN LIFE INSURANCE COM-
PANY, a Corporation (Defendant),
Appellant.

No. 30022.

St. Louis Court of Appeals.
Missouri.

Nov. 5, 1958.

Motion for Rehearing or to Transfer to Su-
preme Court Denied Dec. 8, 1958.

Fordyce, Mayne, Hartman, Renard &
Stribling, William W. Sleater, Jr., St.
Louis, for appellant.

Sherman Landau, St. Louis, for respond-
ent.

WOLFE, Judge.

This is an action by the beneficiary of a life insurance policy. The policy provided for the payment of $2,000 upon the death of the insured. It also provided that an additional $2,000 would be paid to the beneficiary if the death of the insured came about by accident within the terms of the policy. The defendant paid the face of the policy but declined to pay the plaintiff's claim for $2,000 under the accidental death clause. It is for the latter that she seeks recovery. She obtained a verdict and judgment below from which the defendant in due course appealed.

The provision of the policy which is invoked for recovery provides for the payment of "$2,000, upon receipt, at the Home Office of the Company in the City of New York, of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided that death shall not have been the result of self-destruction, while sane or insane, or caused by or contributed to, directly or indirectly, or wholly or partly, by disease, or by bodily or mental infirmity." The petition alleges that the insured "died as a direct result of a violent physical assault inflicted upon him * * *".

The name of the insured was Joseph M. Brown, who was engaged at the time of his death in the practice of law. The evidence presented by the plaintiff in support of the quoted allegation of the petition was that Brown had been in an automobile accident in January of 1952. In that accident he suffered broken ribs and a broken pelvis. He was hospitalized for two months and thereafter convalesced at home for about a year. In July of 1954, he was examined at Mayo Brothers Clinic at Rochester, Minnesota, and thereafter he observed a very sedentary routine and worked only a few hours a day.

On September 12, 1955, at about 4:20 p.m., he entered the lobby of the International Building where he maintained an office. He was followed by a man named Byrnes. As the two entered the lobby they were arguing and Byrnes entered the elevator with Brown where he berated Brown in vile language. The operator of the elevator testified that this continued to the second floor and that when Brown left the elevator Byrnes left with him and said: "You put me away once. I am going to put you away forever."

A Mr. Oldham, also a lawyer, testified that he occupied an office on the same floor with Brown and was on the elevator with Brown and Byrnes. He got off first but Brown passed him walking fast and Byrnes followed about one step behind. Brown's face was white and his hands were trembling. Byrnes continued to curse Brown and call him vile names until they were about 25 feet from Brown's office. Byrnes then grabbed Brown's hat from his head and hit him in the back with his open hand in what Oldham described as a "hard pushing motion". This made Brown stumble. He almost fell but he regained his balance and went on to his office. Brown opened his office door and went in but Byrnes turned and went toward the stairs still carrying Brown's hat and cursing. At this point Oldham went into his own office.

The elevator operator reported the disturbance to the night watchman who came on duty shortly before 5:00 p.m. He went to the second floor and found Brown's door locked. He opened the door with a passkey and found Brown lying dead on the floor of his office.

The police were then called. Brown's body was face down on the floor. He wore glasses and there was a cut upon the nose. A notary seal was on the floor, which presumably had been knocked from a desk as Brown fell. The body was moved to a hospital and later taken to the morgue.

A Dr. Herman Blumenthal was called by the plaintiff and he testified that he had made a post-mortem examination of the

body of the insured. He found evidence of two coronary occlusions, an old one and a "fresh one". He gave as the cause of death the "fresh" coronary occlusion. He stated that one of the coronary arteries had been blocked for some period of time prior to death and that the second blocking had occurred at the approximate time of Brown's death.

The doctor was then asked a long hypothetical question which required him to assume that Brown's heart was defective and had been so for some time and that the events set forth in the evidence took place. From these facts and the information he had acquired by reason of the autopsy he was asked to state the precipitating cause of Brown's death. His answer was: "In my opinion, these events could have precipitated the second coronary attack, the one that led to Mr. Brown's death." Further answering he said: "I think with reasonable medical certainty, it can be concluded that these events precipitated the occlusion of the artery which led to Mr. Brown's death." He was then asked by plaintiff's attorney: "Actually, what I'm trying to determine are the accepted medical facts with reference to the effect of excitement on a person in Mr. Brown's condition." The doctor's answer to this question was: "Yes, it's generally accepted in medicine that rather violent emotional disturbances can precipitate coronary attacks. Now, this is based on a matter of comparing events which led to coronary deaths and placing these on a statistical basis so that you know that certain events happen in coronary arteries that are more than just incidental circumstances. I don't think in this case, for example, one has to assume physical injury at all to account for precipitating factor, that the emotional disturbance alone could do it, and perhaps I should amplify that to say that in a patient with normal coronary arteries, that may not happen but in a patient with known impairment of coronary artery where the coronary artery function is a

marginal sort of thing, emotional disturbances of this kind become quite critical."

On cross-examination the doctor elaborated upon his conclusion and stated that the excitement caused by the argument and threats would have been sufficient to cause a man in Brown's condition to have died. He was asked: "You make no effort to put the fact of this pushing movement as the cause of Mr. Brown's death, do you?" His answer was "No".

The defendant called the chief pathologist of the coroner's office for the City of St. Louis, who testified that he had performed an autopsy on Brown. He gave the cause of death as "(1) coronary occlusion, (2) coronary schlerosis, and (3) old myocardial infarction." He said that there was no evidence of any blow having been struck on the back of the body and that a blow alone such as the one described would not have caused the coronary occlusion. He stated that a blow at the point indicated of sufficient force to cause a coronary occlusion would have fractured a vertebra.

The sole point raised is that the plaintiff failed to prove that the death of the insured was caused by "external, violent and accidental means", and that the contributing cause of death was not disease or bodily infirmity. It is stated that by reason of such failure of proof plaintiff did not make a case against the insurer and that the court should have directed a verdict for the defendant in accordance with its motions to do so.

■ If the evidence is sufficient to show that the death resulted from an unprovoked blow, then the result was accidental. This is true even though the act of striking the blow was intentional on the part of the aggressor. Berryman v. Southern Surety Co., 285 Mo. 379, 227 S.W. 96; McKeon v. National Casualty Co., 216 Mo. App. 507, 270 S.W. 707. Any statements of this court to the contrary in Mayhew v. Travelers' Protective Ass'n of America,

Mo.App., 52 S.W.2d 29, should no longer be followed.

 The provision of the policy exempting the insurer from liability if the death was contributed to, "directly or indirectly, or wholly or partly, by disease, or by bodily or mental infirmity" would not of itself under the facts before us excuse the insurer. The heart condition of the insured could have been a remote and predisposing cause and may not have been the direct and proximate cause of death. Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459; Elbe v. John Hancock Mut. Life Ins. Co., Mo. App., 155 S.W.2d 302; Hughes v. Provident Mut. Life Ins. Co. of Philadelphia, Mo.App., 258 S.W.2d 290.

The appellant asserts, however, that there was no evidence to support a finding that external violence caused the death. In determining this point we, of course, confine our consideration to the evidence of the plaintiff as the jury was at liberty to disbelieve the evidence produced by the defendant. The testimony of the doctor upon which the plaintiff relies to make her case has been set out rather fully above. It will be noted that he at no time said the blow was the cause of the death. He attributed the death to the excitement caused by the argument or the push or blow, but he plainly stated that he could not say that the blow or pushing movement was the cause of Brown's death.

 The doctor further stated that, excluding the physical violence, the emotional disturbance alone caused by the arguing and cursing could have caused the heart failure. This testimony did no more than present evidence that any one of three things was the possible cause of Brown's death. The blow could have been the cause, the argument could have been the cause, or the combination of both could have been the cause. The burden was upon the plaintiff to show the cause of death. Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56;

Murphy v. Western & Southern Life Ins. Co., Mo.App., 262 S.W.2d 340. If the doctor could not say that but for the physical violence Brown would not have died when he did, the plaintiff made no case. Stafford v. New York Life Ins. Co., Mo.App., 248 S.W.2d 76. Without some showing as to which of the possible causes did produce death, there is no basis upon which the jury could conclude that it was one cause or another. Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644.

For the reasons stated, plaintiff failed to make a submissible case. The court therefore erred in refusing to direct a verdict for the defendant, and the judgment is accordingly reversed.

RUDDY, P. J., and ANDERSON, J., concur.